RINGLING BROS.–BARNUM & BAILEY COMBINED SHOWS, INC., Plaintiff,

v.

B.E. WINDOWS CORPORATION, Defendant.

No. 96 Civ. 4758 (SAS).

United States District Court, S.D. New York.

July 11, 1996.

Opinion Denying Reargument Aug. 2, 1996.

Laura E. Goldbard, Stroock & Stroock & Lavan, New York City, for Ringling Bros.–Barnum & Bailey Combined Shows, Inc.

Theresa M. Gillis, Jones, Day, Reavis & Pogue, New York City, for B.E. Windows Corp.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiff Ringling Bros.–Barnum & Bailey Combined Shows, Inc. ("Ringling") brings

this action against Defendant B.E. Windows Corporation ("B.E.") alleging violation of its rights to the trademark phrase THE GREATEST SHOW ON EARTH. Ringling has moved by Order to Show Cause for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure based upon its claims for dilution of this trademark under 15 U.S.C. § 1125(c) and § 368–d of the New York General Business Law.[1] Plaintiff asks the Court to enjoin B.E. from using the name "The Greatest Bar on Earth," which recently opened atop the World Trade Center. An evidentiary hearing was held on July 3, 1996. For the reasons discussed below, Plaintiff's motion is denied.

## I. *Factual and Procedural Background*

### A. *Ringling and Its Mark*

Ringling has been in the circus and entertainment business since the 1870s and has been using the phrase THE GREATEST SHOW ON EARTH continuously from that time until the present in its advertisements, promotions and productions. Complaint ("Cplt.") ¶ 11. Ringling is the owner of several U.S. trademarks, including registrations for the use of THE GREATEST SHOW ON EARTH in television programs, t-shirts, program books, playing cards and coloring books. *Id.* ¶¶ 6–10. Plaintiff also owns trademarks for the well-known globe design used in conjunction with the phrase. *Id.* Ringling's central activity is providing circus entertainment throughout the United States; it presents approximately 1,000 shows per year in 95 cities to approximately 12 million people. *Id.* ¶ 12. The circus appears in the New York City metropolitan region for two months out of every year. *Id.* ¶ 13. Through various media outlets, the mark THE GREATEST SHOW ON EARTH is exposed to over 70 million people per year. *Id.* ¶ 12.

Ringling heavily advertises its circus in each market where it appears, saturating the area with billboards, direct mail, and newspaper, radio and television advertisements. Cplt. ¶ 15. Plaintiff also enters into joint promotions with retailers, radio stations, governmental agencies, and manufacturers of products as varied as hair spray and frozen hamburgers. *Id.* ¶ 16; Plaintiff's Exhibit ("Pl.Ex.") 19. The joint agreements generally require Ringling to provide circus tickets to the co-promoters who in turn pay for print advertisements that feature their goods or services in association with "The Greatest Show on Earth." Joint promotions are subject to highly restrictive guidelines, as are Ringling's trademark licensing agreements. Cplt. ¶ 14. The phrase THE GREATEST SHOW ON EARTH is prominently used in conjunction with or as a substitute for the name "Ringling Bros."[2] *Id.* ¶ 15. During the past fiscal year, Ringling's advertising expenditures totalled over $19 million. *Id.*

As part of its long-standing corporate policy, Ringling vigorously protects any abuse of its trademark. Cplt. ¶ 14. Ringling's legal department handles many incidents of possible trademark infringement each year, in an effort to protect THE GREATEST SHOW ON EARTH.[3] Testimony of Julie Alexa

---

1. The Complaint contains five claims. Count I alleges a violation of the Federal Trademark Dilution Act of 1995, which added Section 43(c) to the Lanham Act, 15 U.S.C. § 1125(c). Count II is a claim for dilution under Section 368–d of the New York General Business Law. Count III alleges trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114. Count IV is an action for false designation of origin and descriptions and representations arising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Count V alleges unfair competition and trademark infringement under the common law of the State of New York. Plaintiff seeks a preliminary injunction based only upon its claims for dilution in Counts I and II.

2. Proof submitted at the hearing tended to show, however, that the trademark is rarely used alone.

3. Ringling's trademark enforcement program has targeted several variations of the mark. For example, Ringling objected to the use of the phrase "The Greatest CD on Earth" by a Chicago bank marketing its certificates of deposit. Ringling opposed the use of the name "The Greatest Game on Earth" for both souvenir baseballs and a computer video game. Additionally, Ringling has opposed the names "The Greatest Grains on Earth" (used at a food store in Davenport, Iowa); "The Greatest Water Adventure on Earth" (used by a waterslide park in Spring, Texas); "The Greatest Breakfast on Earth" (used by a restaurant in Ames, Iowa); and has filed suit in the Eastern District of Virginia against the State of Utah Division of Travel for the state's use of the phrase "The Greatest Snow on Earth" to promote Utah's world-renowned ski industry. In

Strauss, Ringling's Vice President and Corporate Counsel, July 3, 1996. When Ringling is notified of a possible infringement (by an employee or otherwise) it investigates and, if necessary, sends a cease and desist letter to the offending party. *Id.* In almost every instance, Ringling either obtains an agreement from the party to cease its use or grants a license to the party. Affidavit of Julie Alexa Strauss, June 24, 1996 ("Strauss Aff.") ¶ 9.

Ringling further alleges that in an effort to preserve its family-oriented image, it does not conduct joint promotions or licensing with companies whose business involves cigarettes, sex, or alcohol. *Id.* However, Stephen Yaros, Ringling's New York Regional Marketing Director, testified that beer is frequently sold by concessionaires at the various arenas around the country where the circus performs. He also testified that some of Ringling's restaurant sponsors sell alcohol.

### B. *B.E. Windows and Its Bar*

Defendant B.E. Windows Corporation recently opened "The Greatest Bar on Earth" on the 107th floor of the World Trade Center. Cplt. ¶ 20. The bar is the creation of Joseph Baum, widely known for his innovative restaurant creations, such as the Rainbow Room, Mama Leone's, and the original Windows on the World. Memorandum in Opposition to Plaintiff's Application for an Order to Show Cause for a Preliminary Injunction ("Opp.Mem.") at 2. B.E. claims that the bar's location works together with Baum's creative genius to entitle the bar to its designation as "The Greatest Bar on Earth." *Id.* at 15. It is a bar which "[c]onceptually ... is on earth but seems halfway to the moon." *Id.* at 2. Because of this, the bar employs a moon and stars graphic motif, which is used in conjunction with the name "The Greatest Bar on Earth" on food and drink menus. Pl.Ex. 28. More than $50,000 was invested in the design and production of the logo and collateral material used in con-

nection with the bar's name. Declaration of David Emil, President of B.E. Windows, June 28, 1996 ("Emil Dec.") ¶ 8.

### C. *The Present Action*

Toward the end of May 1996, Ringling became aware that B.E. was about to open "The Greatest Bar on Earth." On June 3, 1996, Ringling's counsel informed David Emil that B.E.'s proposed name constituted a violation of Ringling's trademark rights. Cplt. ¶ 21. A follow-up letter was sent on June 4, 1996, requesting that B.E. refrain from its planned use of the name. *Id.* B.E.'s counsel responded with a letter of her own, dated June 13, 1996, in which she stated her belief that "The Greatest Bar on Earth" did not infringe upon Ringling's trademark. *Id.* ¶ 22. Ringling sent a second letter to B.E. on June 14, reiterating its position. *Id.* ¶ 23. A telephone conversation between counsel for the parties took place on June 19. Upon being informed by B.E. that it planned to keep the name, Ringling issued a third warning in writing, stating clearly that Ringling intended to enforce its rights to prevent the dilution of its trademark. *Id.* ¶ 24. Ringling filed its Complaint on June 24, 1996.

### II. *Legal Standards*

 Because of the great potential for harm which may occur from the issuance of a preliminary injunction, the party seeking the injunction must sustain a heavy burden. Before an injunction may be issued, the moving party "must establish (1) irreparable injury and (2) [either] a likelihood of success on the merits, *or* a sufficiently serious question going to the merits and a balance of hardships tipping decidedly in the moving party's favor." *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 135–36 (2d Cir.1992) (emphasis in original). At this stage of the lawsuit, Plaintiff has not satisfied these criteria.

Ringling seeks a preliminary injunction based only upon its claims for trademark

addition to opposing the substitution of any word in place of the word "show" in its trademark, Ringling also has opposed substitution of the word "Earth." For example, Ringling has objected to "The Greatest Show on Wheels" (used in Maine to promote a truck-pull), and "The

Greatest Show on Dirt" (used in Arizona to promote a rodeo). Ringling has opposed many other variations of the mark. *See, e.g., Ringling Bros.–Barnum & Bailey Combined Shows, Inc. v. Celozzi–Ettelson Chevrolet*, 855 F.2d 480, 481 n. 3 (7th Cir.1988).

dilution. A claim for dilution can be made out under both Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c),[4] and under New York state law, N.Y.Gen.Bus.Law § 368–d.[5]

The statutes are similar in several regards. First, both require that the mark have "distinctive quality." Further, both statutes state that a claim for dilution can be established regardless of whether the goods or services are in competition, and regardless of whether there exists a likelihood of consumer confusion. Additionally, both provide protection whether or not the trademark is registered.

### A. Federal Trademark Dilution Act of 1995

■ Because the Federal Trademark Dilution Act of 1995 ("the Act") was enacted just over six months ago, there is virtually no precedent upon which to rely for guidance as to its interpretation.[6] The legislative history of the Act indicates that its purpose is "to protect famous trademarks from subsequent uses that blur the distinctiveness of the mark or tarnish or disparage it, even in the absence of a likelihood of confusion." H.R.Rep. No. 374, 104th Cong., 1st Sess. 3 (1995) U.S.Code Cong. & Admin.News 1995 pp. 1029, 1030. The Act created a federal cause of action to protect trademarks from unauthorized users who "attempt to trade upon the goodwill and established renown of such marks." Id. Congress apparently thought that federal protection was necessary, given the fact that at the time of the Act's passage,

only half of the fifty states had laws protecting trademarks from dilution. See 141 Cong. Rec. H14317–01, H14317 (daily ed. Dec. 12, 1995) (statement of Rep. Moorhead). Because protection was "only available on a patch-quilt system," Congress sought to discourage forum-shopping and give authority to federal courts to issue nationwide injunctions based upon trademark dilution. Id. at H14318.

Members of Congress also spoke in favor of the Act as a way to assist the United States in its worldwide business efforts. See, e.g., 141 Cong.Rec. S19306–10, S19310 (daily ed. Dec. 29, 1995) (statement of Sen. Hatch); 141 Cong.Rec. S19312–01 (daily ed. Dec. 29, .1995) (statement of Sen. Leahy) ("We intend for this legislation to strengthen the hand of our international negotiators from the Office of the U.S. Trade Representative and the Department of Commerce as they press for bilateral and multilateral agreements to secure greater protection for the world famous marks of our U.S. companies.").

■ Significantly, the Act was not intended to "pre-empt existing state dilution statutes.... [A] federal dilution statute should ... coexist with state dilution law." H.R.Rep. No. 374, 104th Cong., 1st Sess. 4 (1995). Congress also recognized that "a mark ... [may] have acquired its fame in connection with one type of good or service ... [but can become] so famous as to be entitled to protection against dilution when

---

**4.** The Lanham Act provides that

 [t]he owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark....

15 U.S.C. § 1125(c). "Dilution" in the Act is defined as "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of—(1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake, or deception." 15 U.S.C. § 1127.

**5.** The New York statute provides that

 [l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark

or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of the goods or services.

N.Y.Gen.Bus.Law § 368–d.

**6.** The only reported case which has relied upon the Act is Hasbro, Inc. v. Internet Entertainment Group, Ltd., No. C96–130WD, 1996 WL 84853 (W.D.Wash. Feb. 9, 1996). Though the court granted a preliminary injunction, its analysis was minimal, probably in light of the fact that the trademark name of plaintiff's children's board game "Candyland" was being used by defendants as the name of its sexually explicit Internet site.

used on or in connection with an unrelated good or service." *Id.* at 8.

### B. *New York General Business Law § 368–d*

■ New York's trademark anti-dilution statute has been on the books for many years, and thus has developed a significant amount of case law to support its application and interpretation. "In sum, the statute protects a trademark's 'selling power.'" *Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A., Inc.,* 875 F.2d 1026, 1030 (2d Cir. 1989) (quoting *Sally Gee, Inc. v. Myra Hogan, Inc.,* 699 F.2d 621, 624–25 (2d Cir. 1983)). In order to establish a claim for dilution under New York law, two elements must be shown: (1) ownership of a distinctive mark, and (2) a likelihood of dilution. *See Hormel Foods Corp. v. Jim Henson Prods., Inc.,* 73 F.3d 497, 506 (2d Cir.1996); *Sally Gee,* 699 F.2d at 625. A likelihood of dilution can be founded upon a showing of either blurring or tarnishment.

■ Tarnishment occurs when the Plaintiff's mark is used by the Defendant in association with inferior or unwholesome goods or services. *See, e.g., Hormel,* 73 F.3d at 507; *Deere & Co. v. MTD Prods., Inc.,* 41 F.3d 39, 43 (2d Cir.1994). Tarnishment may result from an association with obscenity, sexual activity or illegal activity, but is not limited to seamy conduct. *See Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 467 F.Supp. 366 (S.D.N.Y.), *aff'd,* 604 F.2d 200 (2d Cir.1979); *Chemical Corp. v. Anheuser–Busch, Inc.,* 306 F.2d 433 (5th Cir. 1962), *cert. denied,* 372 U.S. 965, 83 S.Ct. 1089, 10 L.Ed.2d 129 (1963).

■ Dilution by blurring, on the other hand, "may occur where the defendant uses or modifies *the plaintiff's trademark* to identify *the defendant's goods or services,* raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product." *Deere,* 41 F.3d · at 43 (emphasis in original).

### III. *Analysis*

#### A. *Irreparable Injury*

■ Once a trademark has become diluted, it has lost the strength it once possessed. No matter how small the dilution, the harm has been done. Dilution has been described as the "gradual whittling away of a firm's distinctive trade-mark or name." *Hormel,* 73 F.3d at 506 (quoting *Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.,* 42 N.Y.2d 538, 544, 399 N.Y.S.2d 628, 369 N.E.2d 1162 (1977)). Just one whittle taken from a stick destroys the possibility that the stick can ever be made whole. As the Second Circuit has recognized, "[d]ilution is itself an injury which [cannot] be recompensed by money damages." *Deere & Co. v. MTD Prods., Inc.,* 860 F.Supp. 113, 122 (S.D.N.Y.), *aff'd,* 41 F.3d 39 (2d Cir.1994) (quoting *American Express Co. v. Vibra Approved Lab. Corp.,* 10 U.S.P.Q.2d 2006, 2013, 1989 WL 39679 (S.D.N.Y.1989)).

With these authorities in mind, I have no doubt that if Ringling's trademark were diluted, that dilution would constitute irreparable harm. It make sense, therefore, to address the second prong of the preliminary injunction test, which includes a discussion of the likelihood of dilution.

#### B. *Likelihood of Success on the Merits*

The first part of the second prong of the preliminary injunction test is a likelihood of success on the merits. Ringling has not shown this likelihood of success under either Section 368–d of the New York General Business Law or Section 43(c) of the Lanham Act. Because the anti-dilution statutes are meant to coexist, the analysis of Plaintiff's claims is the same under either statute.

##### 1. *Ownership of a Famous Mark*

■ The first requirement for a claim of dilution is ownership of a famous mark. There is no question that Ringling owns the trademark THE GREATEST SHOW ON EARTH,[7] and that the mark is therefore entitled to protection against infringement and dilution. Further, there is little doubt

---

**7.** Ringling was first granted a trademark in 1961, but claims 1891 as the date of first use, and a date of first use in interstate commerce in 1907.

that the mark is protectible when used in combination with other words. *See, e.g., Ringling Bros.–Barnum & Bailey Combined Shows, Inc. v. Celozzi–Ettelson Chevrolet,* 855 F.2d 480 (7th Cir.1988) (affirming preliminary injunction based on a dilution cause of action where defendant, though adding words to the mark, adopted plaintiff's entire slogan and a circus motif to sell used cars ("The Greatest Used Car Show on Earth")).

■ Ringling's mark is also entitled to broad protection in the amusement or circus context. For example, if a movie theater called itself "The Greatest Circus on Earth," or a cosmetic company sold "The Greatest Clown Makeup on Earth," such uses would undoubtedly infringe Ringling's rights. In sum, THE GREATEST SHOW ON EARTH is a famous mark as contemplated by New York law and as described in the Lanham Act.[8] The next question, then, is the scope of the protection which should be accorded to Ringling as owner of the mark.

I begin with the obvious. Any unauthorized use of THE GREATEST SHOW ON EARTH will dilute the mark, as the public now associates this phrase with a single source. Thus, the use of this phrase to promote a musical performance or a boxing match will inevitably result in blurring—the demise of the unique identifier of Ringling's product. Similarly, any use of the phrase in the amusement or circus context (or use of that motif), even where additional words are added or a single word is substituted, would result in the dilution of Ringling's mark.

However, Ringling faces an uphill battle when it attempts to protect its mark from alterations or variations outside the circus or amusement context. The question presented here is whether Ringling has the right to protect the phrase "The Greatest ___ on Earth," where the word in the blank is anything other than a circus-related word and the product does not use or relate to a circus motif.[9] In *Ringling v. Celozzi–Ettelson,* 855 F.2d at 482–83, the Seventh Circuit expressly noted that it was not granting Ringling a monopoly over laudatory phrases other than THE GREATEST SHOW ON EARTH.[10]

■ The primary difficulty comes from the fact that Ringling's trademark is a common descriptive phrase, rather than a single distinctive word. Piece by piece, the phrase contains a very common article ("the"), a common adjective ("greatest"), a common noun ("show"), a common preposition ("on"),

8. Under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c),

[i]n determining whether a mark is distinctive and famous, a court may consider factors such as, but not limited to—(A) the degree of inherent or acquired distinctiveness of the mark; (B) the duration and extent of use of the mark in connection with the goods or services with which the mark is used; (C) the duration and extent of advertising and publicity of the mark; (D) the geographical extent of the trading area in which the mark is used; (E) the channels of trade for the goods or services with which the mark is used; (F) the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is being sought; (G) the nature and extent of use of the same or similar marks by third parties; and (H) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register. Using these criteria as a backdrop, there is no doubt that Ringling owns a distinctive and famous mark in the phrase THE GREATEST SHOW ON EARTH.

9. An on-line search conducted in the ALLNEWS database of WESTLAW identified 2,891 references to phrases of the form "greatest ___ on earth" in the period 1985 to June 28, 1996. Declaration of James P. Jeffry ¶ 3. Most of these uses appear to be common descriptive and laudatory phrases used by the press. Under § 43(c) of the Lanham Act, use of a mark in all forms of news commentary and reporting is not actionable.

10. Defendant argues that Ringling is attempting to assert trademark protection for "The Greatest ___ on Earth." In its Reply Memorandum, Ringling denies this and asserts that this case only raises the question of whether "The Greatest Bar on Earth" dilutes Plaintiff's mark, not whether the generic "The Greatest ___ on Earth" dilutes the mark. At the hearing, however, Ringling offered testimony that although it claims that it analyzes each alleged infringing use on a case by case basis, it pursues virtually every use of "The Greatest ___ on Earth." (*See* note 3, *supra*). Nonetheless, counsel eventually agreed with the Court that Ringling wished to protect "The Greatest ___ on Earth," and "The Greatest Show on ___," arguing that if some uses were permitted, the door would be opened for all uses and the mark would be diluted.

and a proper noun, the name of one of the nine known planets in this solar system ("Earth"). The operative word, of course, is "show." Ringling's product is its show: a circus. That is what Ringling does, and it does not claim to do anything else. Nevertheless, through continued use across the United States for 125 years, the primarily descriptive phrase THE GREATEST SHOW ON EARTH has become a famous mark which the public at large immediately associates with the Ringling Bros.–Barnum & Bailey Circus. It is this quality of secondary meaning [11] which makes the mark capable of being protected against dilution or infringement.

However, "The Greatest Bar on Earth" is not Ringling's mark. The word "bar" has nothing to do with the circus or the amusement/entertainment industry. While THE GREATEST SHOW ON EARTH is a famous mark, B.E. is not using that mark.

### 2. A Likelihood of Dilution

The second element which must be shown in order to establish a claim for dilution is a likelihood of dilution, which may be established by a showing of either tarnishment or blurring. Ringling attempts to establish a claim for tarnishment based solely upon the fact that "The Greatest Bar on Earth" is an adult establishment where alcohol is served. Plaintiff claims that the "wholesome, family-oriented image of THE GREATEST SHOW ON EARTH is being adulterated by an association with a bar." Strauss Aff. ¶ 17. According to Ringling's own employee, however, alcohol is served at some of the venues where the circus performs, and some of Ringling's restaurant sponsors also sell alcohol. Testimony of Stephen Yaros, Ringling's New York Regional Marketing Director, July 3, 1996. Thus, there is no basis for Ringling's claim of tarnishment through association with an establishment that serves alcohol.

Ringling's claim for dilution of its mark through blurring is somewhat stronger. The concept of dilution on a blurring theory has been much discussed and frequently analyzed. Blurring involves an injury to the mark's selling power, and occurs when there is a possibility that Plaintiff's mark will lose its ability to serve as a unique identifier of Plaintiff's products, due to Defendant's use of the mark. However, clear and precise standards have yet to emerge. "[B]lurring sufficient to constitute dilution requires a case-by-case factual inquiry." Mead Data, 875 F.2d at 1035 (Sweet, J., concurring). In his concurring opinion in Mead Data, Judge Sweet reviewed the Second Circuit's anti-dilution cases, and articulated a six-step analysis for considering the likelihood of dilution caused by blurring:

a) similarity of the marks

b) similarity of the products covered by the marks

c) sophistication of consumers

d) predatory intent

e) renown of the senior mark

f) renown of the junior mark.

Id. These factors are then balanced to determine whether a likelihood of dilution by blurring exists.

### a. Similarity of the Marks

The marks in question "must be 'very' or 'substantially' similar and ... absent such similarity, there can be no viable claim of dilution." Mead Data, 875 F.2d at 1029 (majority holding that there was no substantial similarity between the marks "LEXIS" and "LEXUS"). See also Hormel, 73 F.3d at 503–504 (although the marks "SPAM" and "Spa'am" are superficially similar, the context of the marks' use distinguished the marks in the consumer's mind); Stern's Miracle–Gro Prods., Inc. v. Shark Prods., Inc., 823 F.Supp. 1077, 1091 (S.D.N.Y.1993) (finding similarity of the marks "Miracle–Gro" plant food and "Miracle Gro" hair care product); McDonald's Corp. v. McBagel's, Inc., 649 F.Supp. 1268, 1281 (S.D.N.Y.1986) (the

---

11. Secondary meaning attaches to a mark only when "the public has learned to identify the name of the product with its source," Field Enter. Educ. Corp. v. Cove Indus., Inc., 297 F.Supp. 989, 994 (E.D.N.Y.1969), or when the mark achieves "a meaning which suggests the company to the public at the very mention of the trade name." National Color Lab., Inc. v. Philip's Foto Co., 273 F.Supp. 1002, 1003 (S.D.N.Y.1967).

"Mc" prefix used by the parties to identify various food products sufficiently supported a claim of dilution by blurring); *Toys R Us, Inc. v. Canarsie Kiddie Shop, Inc.*, 559 F.Supp. 1189, 1208 (E.D.N.Y.1983) (holding that the identity of the "R Us" suffixes in the toy shop context was sufficient to find blurring).

At first glance, the marks at issue here appear to be similar. Each uses a five-word phrase, four of which are the same and one of which is a single-syllable word. The result is two phrases with an identical cadence. However, as discussed above, the word "show" is the most important word in Ringling's trademark. The inherent difference between the words in question, "show" and "bar," dramatically lessens the importance of the four other words which the marks have in common.

The similarity is even less significant given the fact that of the four remaining words, two are so common as to be universal ("the" and "on"). A third ("Earth") is the name of our planet, for which few appropriate synonyms exist. And as noted above, "greatest" is a common laudatory superlative. In sum, Ringling has failed to demonstrate that the marks in dispute are "very" or "substantially" similar.

### b. *Similarity of the Products Covered by the Marks*

Where the products sold under the marks in dispute are alike, there is a greater likelihood that blurring will occur in the mind of the consumer. For example, in *Toys R Us*, 559 F.Supp. at 1208, the court found that "the similarity of the children's products [toys and clothing] sold by the stores" led to a conclusion that the marks would blur the senior user's product identification. Though competition is not a factor in a dilution analysis, the closer the nature of the goods or

services sold by the parties, the greater the likelihood of a loss of Plaintiff's selling power in its trademark.

Here, the products of the parties are very different. Ringling presents circus entertainment across the country. B.E. operates a bar in lower Manhattan. The products covered by the marks are dissimilar, requiring a stronger showing of potential blurring than would be required if the products were similar. *See generally Mead Data*, 875 F.2d at 1031 ("if a mark circulates only in a limited market, it is unlikely to be associated with the mark for a dissimilar product circulating elsewhere"); *Toys R Us*, 559 F.Supp. at 1208 ("the similarity of the children's products sold by the stores compels me to conclude that the name Kids 'r' Us is likely to blur Toys 'R' Us' product identification").

### c. *Sophistication of Consumers*

Blurring is less likely where the consumers of Plaintiff's product are sophisticated. In *Mead Data*, 875 F.2d at 1031–32, the court held that "the recognized sophistication of attorneys, the principal users of the [LEXIS] service, has substantial relevance." The sophistication of the particular consumer group in question led the court to conclude that "it is unlikely that ... there will be any significant amount of blurring between the LEXIS and LEXUS marks." *Id.; see also Sally Gee*, 699 F.2d at 626 ("[s]ophisticated retailers and discerning consumers ... are unlikely to have blurred vision causing them to see 'Sally Gee' upon viewing a Sally Lee label").

In this case, consumers of Ringling's product do not have a high level of sophistication. Unlike the attorneys in *Mead Data*, who identified the LEXIS mark with the LEXIS service and made conscious, knowledgeable decisions to purchase the product, Ringling's consumers commit no such deliberate, reflective and willful acts.[12] Given this low level of

---

12. Testimony was offered at the hearing which tended to show that Ringling distributes large amounts of free or discounted tickets to its co-promoters. Those tickets are passed along to customers of the co-promoters. Testimony also showed that in many areas across the country Ringling donates tickets to underprivileged children, who otherwise would not be able to attend the circus. Further, several of the promotions in the New York region were conducted with radio stations, which arranged for musical acts to perform in the same arena after the evening's circus performance. No proof was offered to show that the audience at the co-promoted shows was present to see the circus rather than the musical acts. In fact, testimony was given that these promotions are done in order to fill up seats on off-nights, bringing people to the circus who other-

sophistication of Ringling's consumers, dilution of Plaintiff's mark by Defendant's use of "The Greatest Bar on Earth" is more likely to occur.

### d. *Predatory Intent*

Predatory intent "requires a showing that the junior user adopted its mark hoping to benefit commercially from association with the senior mark." *Mead Data,* 875 F.2d at 1037. Moreover, "[t]he absence of predatory intent by the junior user is a relevant factor in assessing a claim under the anti-dilution statute, ... since relief under the statute is of equitable origin." *Id.* at 1028 (quoting *Sally Gee,* 699 F.2d at 626) (citations omitted). *See also McDonald's Corp.,* 649 F.Supp. at 1278–79 (defendant attempted to capitalize not only from its use of plaintiff's famous trademark, but also from the publicity generated by the litigation between the parties).

In this case, Ringling has produced no evidence which would show that B.E. adopted the name "The Greatest Bar on Earth" in order to benefit commercially from the fame of the mark THE GREATEST SHOW ON EARTH. Joseph Baum, the creator of the bar, testified that he has had the concept of a spectacular bar for many years, and that he has waited a long time to see his dream of the greatest bar on Earth become a reality. Testimony of Joseph Baum, July 3, 1996. Baum further testified that he did not consider any other names for the bar, and did not recall if any other names were discussed by B.E.'s creative team. *Id.*

However, Baum also testified that B.E. did not seek the assistance of counsel to determine if "The Greatest Bar on Earth" would infringe upon another party's trademark. *Id.* Baum did not know if B.E. conducted a trademark search, even after receiving notice from Ringling that the name infringed on its rights to THE GREATEST SHOW ON EARTH. *Id.* B.E.'s failure to inquire, through an attorney or otherwise, about any possible problems with the use of "The Greatest Bar on Earth" raises the possibility

that B.E. was aware of a potential infringement, but went ahead with its plans anyway. Baum testified that he was familiar with Ringling's mark THE GREATEST SHOW ON EARTH and the mark's association with Ringling. However, he stated that nobody on the creative team thought that the bar's name would be a problem, because a bar is not a circus. *Id.*

No evidence was offered at the hearing that would support a finding that B.E. acted with predatory intent by adopting the name "The Greatest Bar on Earth." Further discovery may yet reveal information which points to bad faith or predatory intent on the part of B.E. For the purpose of this motion, however, there is no showing of bad faith or predatory intent.

### e. *Renown of the Senior Mark*

As explained above, in order to be protectible under an anti-dilution law, a trademark must possess a distinctive quality capable of dilution. Having a famous mark is important for two reasons. First, the degree of fame or national notoriety which the senior mark possesses affects the "mental associations consumers make between the two marks, which in turn bears upon the likelihood of blurring." *Mead Data,* 875 F.2d at 1038. Second, "a plaintiff possessing a nationally famous mark needs to focus less on other factors, such as similarity of the products or sophistication of the consumers, to establish blurring." *Id.* As noted above, Ringling's mark is famous. *See* Part III.B.1. *supra.*

### f. *Renown of the Junior Mark*

"The Greatest Bar on Earth" is not well-known or famous. The name has no inherent distinctiveness, nor has it acquired secondary meaning. "The Greatest Bar on Earth" is merely a descriptive phrase for a bar on top of the World Trade Center. Where the fame of the junior mark is non-existent, the likelihood of finding dilution by blurring is minimal.

---

wise may not have attended. These factors combined reveal that those who attend the circus do so for a variety of reasons, only one of which

may be to see THE GREATEST SHOW ON EARTH. Therefore, consumer sophistication is low.

Though B.E. has not placed advertisements in the media, it has spent about $56,000 on collateral material such as brochures, gift certificates, press kits, signs and menus. Deposition of E. Sue Klein, Chief Financial Officer of B.E. Windows, July 2, 1996 at 48. B.E. also received media coverage prior to its opening. Cplt. Ex. 6. However, B.E.'s minimal expenditures and scant media coverage have not helped "The Greatest Bar on Earth" achieve any degree of fame, either nationally or in the New York metropolitan area.[13] Because it is a mark of little renown, it is unlikely that its use will cause any dilution by blurring in the minds of the public.

### g. Balancing the Factors

It is apparent that Ringling has failed to demonstrate a likelihood of dilution by blurring. The marks in dispute are not similar, nor are the products covered by the marks. The fact that Ringling's consumer base is not sophisticated weighs in Ringling's favor, because it tends to show that Ringling's consumers are more likely to blur the marks in question. However, Ringling has not shown predatory intent on behalf of B.E., though B.E.'s failure to run a trademark search may be evidence of bad faith. Finally, Ringling's mark is nationally famous and distinctive, while B.E.'s mark has not yet achieved such notoriety. As such, blurring is unlikely to occur between Ringling's famous mark, THE GREATEST SHOW ON EARTH, and B.E.'s establishment, "The Greatest Bar on Earth." In the absence of dilution, there is no showing of irreparable harm. See Part III.A. supra.

### C. Sufficiently Serious Question and Balance of Hardships

It is axiomatic that a preliminary injunction cannot issue in the absence of proof of irreparable harm. As just discussed, Plaintiff is unable at this time to establish a likelihood of dilution. As a result, I am unable to conclude that Plaintiff will suffer irreparable harm by reason of Defendant's use of "The Greatest Bar on Earth." I therefore conclude that it is unnecessary to address the alternative half of the preliminary injunction test—namely whether Plaintiff has presented a serious question going to the merits and a balance of hardships tipping decidedly in its favor.[14]

### IV. Conclusion

Ringling has not established irreparable harm on its dilution claims. Nor has it shown a likelihood of success on the merits or a sufficiently serious question going to the merits plus a balance of hardships tipping in its favor. Ringling has the right to protect its trademark THE GREATEST SHOW ON EARTH from dilution and infringement. For the purposes of this motion, however, Ringling has not demonstrated that its trademark rights prohibit B.E.'s use of the phrase "The Greatest Bar on Earth."

For the reasons set forth above, Plaintiff's motion by Order to Show Cause for a preliminary injunction is denied.

13. The possibility that "The Greatest Bar on Earth" may someday achieve national notoriety is not relevant for the purposes of this motion.

14. If I were to fully address this issue, I would likely find that sufficiently serious questions have been presented to make them a fair ground for litigation. See Pashaian v. Eccelston Properties, Ltd., 88 F.3d 77 (2d Cir.1996). However, I would further conclude that Plaintiff has failed to show that the balance of hardships tips decidedly in its favor. In balancing the equities, as required by Section 43(c) of the Lanham Act and this test, it appears that Ringling has tolerated uses of the phrase "The Greatest ___ on Earth" for significant periods of time. The most obvious example is the State of Utah's use of "The Greatest Snow on Earth" slogan on the State's license plates. Testimony was given at the hearing which indicated that "The Greatest Snow on Earth" has been used for many years. Ringling filed a lawsuit against the Utah Division of Travel only last month. See Ringling Bros.–Barnum & Bailey Combined Shows, Inc. v. State of Utah Division of Travel, No. 96788–A (E.D.Va. filed June 6, 1996). Ringling chose not to request a preliminary injunction in that case. Ringling's harm is speculative. Ringling cannot demonstrate that the existence of Defendant's bar is causing it any harm at this time. Rather, Ringling's claim is that over time, use of "The Greatest Bar on Earth" will eventually dilute the public's association of Ringling's trademark with a single source. This matter can likely reach final resolution before any such harm occurs.

On July 11, 1996, the Court denied Plaintiff's motion for a preliminary injunction. *See Ringling Bros.–Barnum & Bailey Combined Shows, Inc. v. B.E. Windows Corporation*, 937 F.Supp. 204 (S.D.N.Y.1996). Plaintiff now moves for reargument under Local Rule 3(j) and to alter or amend the July 11 Opinion and Order under Fed.R.Civ.P. 59(e). Alternatively, Plaintiff requests an expedited trial pursuant to Fed.R.Civ.P. 40.[1]

 The standard of analysis is the same for both the motion for reargument under Local Rule 3(j) and the motion for reconsideration under Fed.R.Civ.P. 59(e). *See In re New York Asbestos Litigation*, 847 F.Supp. 1086, 1141 (S.D.N.Y.1994). In order to prevail, the moving party must demonstrate that the Court overlooked factual matters or controlling decisions "that might materially have influenced its earlier decision." *Morser v. AT & T Information Systems*, 715 F.Supp. 516, 517 (S.D.N.Y.1989). This criteria will be strictly construed against the moving party. *See Monaghan v. SZS 33 Assoc., LP*, 153 F.R.D. 60 (S.D.N.Y.1994) (Sweet, J.). Moreover, the decision to grant or deny motions for reargument or reconsideration is within the sound discretion of the Court. *See Schaffer v. Soros*, 1994 WL 592891 (S.D.N.Y. Oct. 31, 1994).

 In support of its motion, Plaintiff raises a number of issues and arguments that were considered and rejected by the Court in its July 11, 1996 Opinion.[2] Plaintiff makes only one argument that merits any attention: Ringling asserts that the Court should not have included predatory intent as a factor in its six-part analysis of Ringling's claim of dilution under the Federal Anti–Dilution Statute, 15 U.S.C. § 1125(c)(2).[3]

The language of Section 43(c)(2) indicates that predatory intent is not relevant to a claim for injunctive relief under the Federal Anti–Dilution Statute. However, the Court must still balance the five remaining factors: (1) similarity of the marks, (2) similarity of the products covered by the marks, (3) sophistication of consumers, (4) renown of the senior mark, and (5) renown of the junior mark. Even without including predatory intent in the analysis, I find that Ringling cannot demonstrate a likelihood of dilution by blurring for the reasons discussed in the July 11 Opinion. In the absence of dilution, there is no showing of irreparable harm. Plaintiff therefore does not meet the requirements necessary for the issuance of a preliminary injunction.

Because Plaintiff has not shown that the Court overlooked any controlling case law or factual matters "that might materially have influenced its earlier decision," *Morser*, 715 F.Supp. at 517, Plaintiff's motions for reargument and reconsideration are denied. Plaintiff's request for an expedited trial will be fully addressed at the upcoming pretrial conference.

SO ORDERED.

---

1. Familiarity with the underlying facts of this dispute is assumed.

2. These arguments are repetitive and should not have been raised again here. *See Bank Leumi Trust Co. of New York v. Istim, Inc.*, 902 F.Supp. 46, 47–48 (S.D.N.Y.1995) (Local Rule 3(j) is strictly applied in order to "avoid repetitive argument on issues that have been fully considered by the court").

3. Section 1125(c)(2) states that

In an action brought under the subsection, the owner of a famous mark shall be entitled only to injunctive relief unless the person against whom the injunction is sought willfully intended to trade on the owner's reputation or to cause dilution of the famous mark. If such willful intent is proven, the owner of a famous mark shall also be entitled to the remedies set forth in sections 35(a) and 36, subject to the discretion of the court and the principles of equity.