STAR MARKETS, LTD., a Hawaii
corporation, Plaintiff,

v.

TEXACO, INC., a Delaware corporation,
and Texaco Refining and Marketing,
Inc., a Delaware corporation, Defendants.

Civil No. 95–01018 BMK.

United States District Court,
D. Hawai'i.

Nov. 8, 1996.

Susan Oki Mollway, Milton M. Yasunaga, Martin E. Hsia, Cades Schutte Fleming & Wright, Honolulu, HI, for plaintiff.

Paul Maki, Elise Owens Thorn, Maki & Thorn, Honolulu, HI and Mark D. Litvack, Texaco Inc. Legal Department, Universal City, CA, and William G. Pecau, Pennie & Edmonds, New York City, for defendants.

*ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO DILUTION CLAIM AND GRANTING DEFENDANTS' CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF'S DILUTION CLAIM*

KURREN, United States Magistrate Judge.

This case is a trademark infringement action brought by Star Markets, Ltd. against Texaco, Inc. and Texaco Refining and Marketing, Inc. Plaintiff has operated a supermarket business in Hawaii under the name "Star Markets" since 1946. Plaintiff's business now includes eight grocery stores on Oahu, Maui and Kauai. Defendants operate gasoline stations throughout the United States. They began operating gasoline stations in Hawaii in 1959. Defendants also operate convenience stores in connection with some gasoline stations on the mainland and, since the 1980s, in Hawaii. These stores had been named "Food Mart," but Defendants have converted the name of some stores to "Star Mart" on the mainland. In December of 1995, Defendants began to use the name "Star Mart" preceded by the Texaco "Star–T" logo for its 17 convenience stores in Hawaii. Plaintiff challenges, in part, Defendants' use of "Star Mart" claiming that it causes dilution of Plaintiff's "Star Market" mark.

On August 16, 1996, Plaintiff filed a Motion for Partial Summary Judgment as to Dilution Claim. Plaintiff seeks a ruling granting summary judgment in its favor or, in the alternative, a ruling that Defendants will be deemed as a matter of law to be diluting Plaintiff's mark if Defendants' mark is found to cause confusion relating in any way to Plaintiff. Defendants filed a Cross Motion for Partial Summary Judgment as to Plaintiff's Dilution Claim on October 3, 1996. The motions came on for hearing before this court on October 21, 1996. After careful consideration of the pleadings and arguments of counsel, the court DENIES Plaintiff's Motion and GRANTS Defendants' Cross Motion for Partial Summary Judgment as to Plaintiff's Dilution Claim.

*SUMMARY JUDGMENT STANDARD*

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party has the initial burden of "identifying for the court those portions of the materials on file in the case that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). In a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party. *State Farm Fire & Casualty Co. v. Martin,* 872 F.2d 319, 320 (9th Cir.1989).

Once the moving party has met its burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party

must set forth specific facts showing that there is a genuine issue for trial. *T.W. Elec.,* 809 F.2d at 630; Fed.R.Civ.P. 56(e). The opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. *Intel Corp. v. Hartford Accident & Indemnity Co.,* 952 F.2d 1551, 1558 (9th Cir.1991). If the nonmoving party fails to assert specific facts, beyond the mere allegations or denials in its response, summary judgment, if appropriate, shall be entered. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 884, 110 S.Ct. 3177, 3186–87, 111 L.Ed.2d 695 (1990); *T.W. Elec.,* 809 F.2d at 630; Fed.R.Civ.P. 56(e). There is no genuine issue of fact if the opposing party fails to offer evidence sufficient to establish the existence of an element essential to that party's case. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552; *Citadel Holding Corp. v. Roven,* 26 F.3d 960, 964 (9th Cir.1994); *Blue Ocean Preservation Soc. v. Watkins,* 754 F.Supp. 1450, 1455 (D.Haw.1991).

## DISCUSSION

■ In Count Two of Plaintiff's Second Amended Complaint, Plaintiff asserts a claim of dilution in violation of 15 U.S.C. § 1125(c). Pl.'s Second Am. Compl. ¶¶ 43–50. The federal Trademark Dilution Act of 1995 ("Act") entitles the holder of a famous trademark to relief[1] when that mark is diluted by another's use of a similar mark, whether or not there is any likelihood of confusion between the marks. The Act provides, in part:

> (1) The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark.

15 U.S.C.A. § 1125(c)(1) (Supp.1996). To obtain protection from this statute, Plaintiff must demonstrate that: (1) its mark is famous, (2) Defendants' use of their allegedly diluting mark began after Plaintiff's mark achieved such fame, and (3) Defendants' use of their mark causes dilution of the distinctive quality of Plaintiff's mark.

The Act further provides:

> In determining whether a mark is distinctive and famous, a court may consider factors such as, but not limited to—

> (A) the degree of inherent or acquired distinctiveness of the mark;

> (B) the duration and extent of use of the mark in connection with the goods or services with which the mark is used;

> (C) the duration and extent of advertising and publicity of the mark;

> (D) the geographical extent of the trading area in which the mark is used;

> (E) the channels of trade for the goods or services with which the mark is used;

> (F) the degree of recognition of the mark in the trading areas and channels of trade used by the mark's owner and the person against whom the injunction is sought;

> (G) the nature and extent of use of the same or similar marks by third parties;

> (H) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

15 U.S.C.A. § 1125(c)(1). In short, the Act protects truly famous marks, which are presumed distinctive,[2] but not distinctive marks if they are not also sufficiently famous. *See generally,* JEROME GILSON, TRADEMARK DILUTION NOW A FEDERAL WRONG 11 (1996).

Furthermore, for purposes of satisfying the third element, the statute defines dilution as "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of—(1) competition between the owner of the famous mark and the other parties, or

---

1. Only injunctive relief is available unless the second user willfully intended to trade on the owner's reputation or to cause dilution of the famous mark. 15 U.S.C.A. § 1125(c)(2) (Supp. 1996).

2. This presumption is necessary to prevent circular reasoning in the application of the enumerated factors to determine whether a mark is distinctive and famous.

(2) likelihood of confusion." 15 U.S.C.A. § 1127 (Supp.1996). Dilution may be established by showing tarnishment or blurring. To determine whether dilution by blurring is established, the following factors are balanced: a) similarity of the marks, b) similarity of the products covered by the marks, c) sophistication of consumers, d) predatory intent, e) renown of the senior mark, and f) renown of the junior mark.[3]

I. Plaintiff's "Star Markets" mark is not sufficiently famous to merit protection from dilution pursuant to the Act.

A mark must be especially famous and distinctive to merit protection under the Act because a violation of the Act triggers extensive relief—preventing all others from using the mark, regardless of whether the marks are in related fields or are those of competitors. The Act identifies eight non-exclusive factors for the court to balance in determining whether a mark is famous. The court's analysis of each factor is discussed below.

A. *Degree of distinctiveness of Plaintiff's mark*

█ John Bunge, one of Plaintiff's experts, conducted a secondary meaning survey for Plaintiff which measured the association between the word "Star" and Plaintiff's grocery stores. Just over seventy-five percent of the respondents associated "Star" with Plaintiff. Accordingly, Mr. Bunge concluded that "Star" was sufficiently associated with Plaintiff to establish secondary meaning. Both parties agree that Mr. Bunge's secondary meaning survey established that Plaintiff's mark has acquired distinctiveness. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769, 112 S.Ct. 2753, 2757–58, 120 L.Ed.2d 615 (1992) (determining that secondary meaning is the same as acquired distinctiveness).

The parties dispute the significance of this distinctiveness. Plaintiff, relying on *Ringling Bros.–Barnum. & Bailey Combined Shows, Inc. v. B.E. Windows Corp.*, contends that marks possessing acquired distinctiveness are entitled to protection under the Act. *See Ringling Bros.*, 937 F.Supp. 204, 211 (S.D.N.Y.1996) (finding that a slogan comprised of common words is capable of being protected under the Act if secondary meaning is established).

Plaintiff's reliance is misplaced, however. The court in *Ringling Bros.* merely stated that a slogan comprising common words could not be deemed distinctive unless it had secondary meaning, and only then could it be capable of protection. Being capable of protection, however, is not the same as meriting protection. The degree of that distinctiveness must still be weighed.[4]

█ Acquired distinctiveness is merely a minimum threshold for establishing protectibility of a trademark that is not suggestive, arbitrary or fanciful. Once established, the Act compels the court to consider the *degree* of that distinctiveness as one of many factors for determining whether the mark is famous.

█ Plaintiff then contends that the high percentage of respondents who associated the word "Star" with its grocery stores necessarily means that the mark has a high degree of distinctiveness. The court finds Mr. Bunge's survey results to be relevant to this inquiry. The court does not agree with Plaintiff, however, that the high degree of association necessarily equates to a high degree of distinctiveness. As Defendants point out, the secondary meaning survey did not measure the relative strength of the consuming public's association between the word "Star" and Plaintiff's mark in comparison with third party uses of the same or similar marks.

---

3. Courts interpreting the Act have used this test, first articulated by the Second Circuit in *Mead Data, Inc. v. Toyota Motor Sales*, 875 F.2d 1026, 1035 (2d Cir.1989). *See Ringling Bros.–Barnum & Bailey Combined Shows, Inc. v. B.E. Windows Corp.*, 937 F.Supp. 204, 211–14 (S.D.N.Y.1996); *WAWA, Inc. v. Haaf*, 1996 WL 460083 at *3–4 (E.D.Pa. Aug. 7, 1996); *Clinique Labs., Inc. v.*

*Dep Corp.*, 945 F.Supp. 547, 562–63 (S.D.N.Y. 1996).

4. In *Ringling Bros.*, the court had already determined that the slogan at issue, "The Greatest Show on Earth," was famous and distinctive because of its unique and exclusive use in the circus/entertainment field. 937 F.Supp. at 210.

Thus, the court finds that Plaintiff's mark possesses more than the bare minimum degree of distinctiveness, but less than a high level of distinctiveness. Accordingly, this factor slightly favors Plaintiff.

### B. *Duration and extent of Plaintiff's use and advertising of its mark*

Plaintiff has used its mark for 46 years in connection with its eight grocery stores on Oahu, Maui and Kauai. In addition, Plaintiff has advertised its mark extensively by spending $30 million dollars over the past decade to advertise its stores throughout the state of Hawaii, even where Plaintiff has no stores. There is no dispute that Plaintiff spent far more than Defendants to advertise their respective marks within Hawaii during the same time period. Thus, this factor favors Plaintiff.

### C. *Geographic extent of the mark's trading area*

The parties strenuously dispute the scope and importance of this factor. Defendants urge the court to find that Plaintiff's mark must be used nationally, or at least in several states, in order to be protected by the Act. Plaintiff argues that the Act itself does not require a minimal trade area. Plaintiff then cites a leading treatise on trademark law which concludes that marks that are "big fish in a small pond," i.e., that "are well known in a defined trade or geographical area" may be protected from dilution. 3 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 24.17[5] (3rd ed. April, 1994).[5]

▇ The court finds that the Act does not require national fame. The Act does not indicate either a minimal or optimal trade area for courts to consider when weighing this factor. Thus, reference to the legislative history and to case law since enactment of the Act is appropriate. While the geographic extent of the trading area in which a mark is used is only one factor for the court to consider, reference to the legislative history

reveals that it is an important factor. For example, the Judiciary Committee reported that:

A federal dilution statute is necessary because famous marks ordinarily are used on a nationwide basis and dilution protection is currently only available on a patch-quilt system of protection, in that only approximately 25 states have laws that prohibit trademark dilution.... It is important to note that [the Act] would not preempt existing state dilution statutes. State laws could continue to be applied in cases involving locally famous or distinctive marks.

H.R.Rep. No. 374, 104th Cong., 1st Sess. 1995, 1996 U.S.C.C.A.N. 1029, 1030–31. In the section-by-section analysis of the enumerated factors for determining fame, the Committee further stated that "[t]he geographic fame of the mark must extend throughout a substantial portion of the U.S." *Id.* at 1034.

Courts that have applied the Act have done so for marks with national or substantial regional fame. *Sunbeam Products Inc. v. The West Bend Co.*, 39 U.S.P.Q.2d 1545 (S.D.Miss.1996) (finding that Sunbeam mixer's mark is used and recognized nationally); *Ringling Bros.*, 937 F.Supp. at 206 (finding that "The Greatest Show on Earth" mark is used and known nationally); *Clinique Labs., Inc. v. Dep Corp.*, 945 F.Supp. 547 (S.D.N.Y. 1996) (finding that "Clinique" mark is used and known nationally). The smallest geographic area in which a mark was used and received protection under the Act is a five state region. One court recently determined that a convenience store chain of over 500 stores that used its "Wawa" mark in five states was not precluded from obtaining protection under the Act. *WAWA, Inc. v. Haaf,* 1996 WL 460083 (E.D.Pa. Aug. 7, 1996).

▇ Based on the legislative history and the reasoning of courts that have analyzed the Act, this court finds that the geographic area in which a mark is used is an important factor in determining whether a mark is fa-

---

5. No cases interpreting and applying the new federal Act were available when McCarthy wrote this comment. Thus, while his comment is helpful in applying state or common law which generally requires that a mark be distinctive, it is not persuasive for purposes of determining the fame of a mark pursuant to the Act.

mous. The court further finds that fame in only one state militates strongly against meriting protection from dilution under federal law. Accordingly, because Plaintiff's use of its mark is significantly limited relative to the examples cited above, the court finds that this factor overwhelmingly favors Defendants.

### D. Use and degree of recognition within the channels of trade

■ Plaintiff's expert also conducted a recognition survey for Plaintiff independent of the secondary meaning survey. He asked respondents to tell him the names of any grocery stores or supermarkets they could remember. After analyzing the responses, Mr. Bunge found that 96.6% of the respondents recognized Star Markets. From this, he concluded that Star Markets is a very famous and well known name in Hawaii. He further found that Star Markets was more recognized in Hawaii than DuPont, and only slightly less recognized than Buick or Kodak.

Plaintiff relies on this recognition survey for the proposition that its mark is more famous than DuPont, offered as an example of a mark possessing the requisite fame. *See* H.R.Rep. No. 374, 1996 U.S.C.C.A.N. at 1030 (stating that "the use of DUPONT shoes, BUICK aspirin, and KODAK pianos would be actionable under [the Act]"). Accepting Plaintiff's view of its fame relative to that of DuPont's within the state of Hawaii does not end the court's inquiry, however. The examples in the legislative history of the Act are of nationally famous names. Even Plaintiff does not argue that a recognition survey administered nationally would yield the same results. Thus, the court does not find this comparison to be helpful.

Nevertheless, Plaintiff does use its mark extensively within its channels of trade, namely, retail sales of grocery items in the state of Hawaii. Plaintiff's extensive use of its mark for sales of grocery items in the

state of Hawaii has resulted in a high degree of recognition. Thus, this factor favors Plaintiff.

### F. Nature and extent of use of same or similar marks by third parties

■ Plaintiff argues that while third parties use the name "Star," no one other than Defendants uses a mark similar to "Star Markets." Plaintiff then states that no other retailer specializing in food items uses the name "Star." [6] Plaintiff adds that it is claiming dilution only by Defendants' use of their mark in the same or related field; thus, no consideration of the use of "Star" in other industries is warranted. The court disagrees. An evaluation of the similarity of the marks, the similarity of the products covered by the marks and whether Plaintiff and Defendants are in direct competition belongs in a discussion addressing the third element of Plaintiff's claim—whether Defendants' mark causes dilution.[7]

For purposes of determining whether Plaintiff's mark is famous, the court will consider the use of the same or similar marks by third parties in any industry. Such an analysis is appropriate in light of the following comment by the Judiciary Committee:

> The protection of marks from dilution differs from the protection accorded marks from trademark infringement. Dilution does not rely upon the standard test of infringement, that is, likelihood of confusion, deception or mistake. *Rather, it applies when the unauthorized use of a famous mark reduces the public's perception that the mark signifies something unique, singular, or particular.*

H.R.Rep. No. 374, 1996 U.S.C.C.A.N. at 1031 (emphasis added). The more times the word "Star" is used in connection with a variety of goods and services, the less likely Plaintiff's mark could signify something unique, singular or particular. Thus, the court notes the

---

6. Plaintiff and Defendants submitted a Statement of Facts in connection with Plaintiff's Motion. To the extent there is any dispute over facts, the court will construe those facts in Plaintiff's favor.

7. The test for determining whether dilution is established is a balancing of the following factors

first articulated in *Mead Data,* 875 F.2d at 1035: a) similarity of the marks, b) similarity of the products covered by the marks, c) sophistication of consumers, d) predatory intent, e) renown of the senior mark, and f) renown of the junior mark.

following third party uses of "Star" and "Star Markets."

According to Defendants [8], in the Western United States, there are 50 listings for grocery, convenience and food-related businesses which use "Star" as part of their name, including 23 retail grocery stores which are identified, at least in part, by the words "Star Market." Plaintiff sells grocery items manufactured by unrelated third parties bearing the mark "Star" or a mark that includes the word "Star" including: Star cherries, Star olive oil, Star vinegar, Red Star yeast, StarKist tuna, Star coffee filters, Star breads and Hawaii Star potato rolls. Automated teller services provided by an unrelated third party, Star System, are offered in Plaintiff's stores. At least 96 businesses in Hawaii use the name "Star," some of which are involved in the food industry including: Hawaii Star Bakery, Inc., Star Ice & Soda Works, Star Produce, 7 Star Cafe, Blue Star Lounge, Golden Star, Star Trading, Inc., North Star Sausage, and Five Star Noodle Factory.

Furthermore, federal trademarks have been issued to at least eight grocery stores, convenience stores, or related services, owner by persons other than Plaintiff and Defendants, which use "Star" as part of the mark. This includes a federal registration, issued in 1988, to Gateway Foods, Inc. for use of the exact same mark, "Star Markets," in connection with its grocery store chain. Defendants obtained two federal registrations for "Star Mart" in 1990 and 1992 for retail convenience store services and for retail grocery store services, in light of the already issued registration to Gateway Foods, Inc. Defendants currently use the trademark "Star Mart" for convenience store services offered at over 300 Texaco gasoline stations on the mainland. In addition, Defendants own at least 23 other federal registrations for marks incorporating a star symbol or the word "Star" for use in connection with retail gasoline stations and related services. Finally,

there are five State of Hawaii trademark registrations which contain the word "Star" for use in connection with food products and services.

With so many uses of the word "Star" with and without "Markets" by other businesses and the use and federal registration of the exact same "Star Markets" mark by another grocery store chain, the court finds that this factor heavily favors Defendants.

### G. Federal registration of a mark

Plaintiff obtained a State of Hawaii registration for "Star Markets" in 1992, but does not own a federal registration for its mark. Plaintiff argues that application of the Act is not barred by its lack of a federal registration for its mark. Not owning a federal registration of its mark, however, compels the court to find that this factor favors Defendants.

### H. Balancing of the Factors

■ After carefully weighing the factors discussed above the court finds that Plaintiff's "Star Markets" mark is not famous for purposes of the Act. Thus, Plaintiff failed to allege facts sufficient to support the first element of its dilution claim pursuant to the Federal Trademark Dilution Act of 1995, 15 U.S.C. § 1125(c).

Plaintiff urges the court to find that a similar mark within the same industry is more likely to dilute than a mark in a completely different industry. Plaintiff also contends that its "Star Markets" mark is not the same as "Star," thus the numerous uses of "Star" by non-retail grocery businesses in Hawaii are not similar and do not dilute its mark. Plaintiff argues these points in connection with the factors for determining fame. While not appropriate in that context, had Plaintiff established fame, these arguments would have been extremely relevant to an analysis of whether Plaintiff established

---

**8.** Defendants filed a Statement of Facts in connection with the Cross Motion. Plaintiff failed to submit a Statement of Facts disputing Defendants' facts in connection with the Cross Motion. Thus, the court may deem Defendants' facts as true. However, because the court is considering both motions together, only Defendants' facts asserted in connection with the Cross Motion which are not disputed or contradicted by Plaintiff's facts in connection with its Motion will be deemed as true.

that Defendants' use of their mark caused dilution of Plaintiff's mark.

In light of the court's determination that Plaintiff failed to establish the requisite fame for a federal dilution claim, however, the court declines to address the remaining elements of that claim.

## II: A Finding of Trademark Infringement or a Likelihood of Confusion Does Not Mandate a Finding of Dilution

██ Plaintiff seeks an alternative ruling that Defendants will be deemed as a matter of law to be diluting Plaintiff's mark if Defendants' mark is found to cause confusion relating in any way to Plaintiff. For the reasons discussed below, the court DENIES Plaintiff's request.

The concept of trademark infringement is distinct from trademark dilution. MCCARTHY, *supra*, § 24.13[1][b]. McCarthy explains that the Restatement (Third) of Unfair Competition recognizes that the mental connection between purchasers or prospective purchasers in the dilution context is different than in the infringement context. In particular:

> The connection ... is not that which serves as the basis of trademark infringement—the mistaken belief that the plaintiff is in some way associated with defendant's goods—but rather is the accurate recognition that a mark once associated exclusively with the plaintiff is now also in use as an identifying symbol by others. Thus, a given unauthorized use by defendant can cause confusion in some people's minds and in other people's minds cause dilution by blurring. *But in no one person's mind can both perceptions occur at the same time. Either a person thinks that the similarly branded goods or services come from a common source (or are connected or affiliated) or not.* In that sense they are inconsistent states of customer perception.

*Id.* (quotations and footnotes omitted, emphasis added). McCarthy further clarifies that as different legal theories which look to "separate and distinct harms[,] ... both infringement by a likelihood of confusion and dilution can coexist as legal findings if it is proven

that a significant number of customers are likely to be confused and that among a significant number of customers who are not confused, the defendant's use will illegally dilute by blurring or tarnishment." *Id.*

This discussion by McCarthy shows that a finding of trademark dilution does not necessarily flow from a finding of trademark infringement, as Plaintiff suggests. Furthermore, and perhaps more importantly, even if a finding of confusion could lead to a finding that dilution has occurred, only the causation element of Plaintiff's dilution claim would be satisfied. As discussed above, to prevail on a dilution claim pursuant to the Act, Plaintiff must establish that its mark is famous. Plaintiff failed to establish this critical element, thus the requested alternative ruling must also fail.

### CONCLUSION

The parties agree that the material facts are not in dispute. Thus, this is an appropriate time for the court to rule on the merits of Plaintiff's dilution claim. As discussed above, the court concludes that Plaintiff's mark is not famous for purposes of the Act. Accordingly, the court GRANTS Defendants' Cross Motion for Partial Summary Judgment as to Plaintiff's Dilution Claim, DENIES Plaintiff's Motion for Partial Summary Judgment as to Dilution Claim, and DENIES Plaintiff's requested alternative ruling.

IT IS SO ORDERED.