**TRICOM, INC., Plaintiff,**

v.

**ELECTRONIC DATA SYSTEMS CORPORATION, Defendant.**

No. 92–76374.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 14, 1995.

Bruce Kempton, Southfield, MI, for plaintiff.

James Gilliland, Jr., San Francisco, CA, Gregory M. Kopacz, Detroit, MI, for defendant.

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OR IN THE ALTERNATIVE TO EXCLUDE CERTAIN DAMAGE CLAIMS**

EDMUNDS, District Judge.

This matter came before the court on Defendant's July 10, 1995, motion for partial summary judgment or in the alternative to exclude certain damage claims. For the reasons stated below, the motion is granted in part and denied in part.

**I. Facts**

The court summarized the essential facts of this case in its October 5, 1994, order as follows:

"Plaintiff, Tricom Inc., brought this antitrust action against Electronic Data Systems Corporation ("EDS"), a wholly-owned subsidiary of General Motors Corporation ("GM"). Both Tricom and EDS sell computer hardware, software, data processing services, and support services. Tricom and EDS provide these products and services to customers, including engineering companies that do computer assisted design and computer assisted manufacturing. Their engineering customers provide design work for manufacturers of automobiles, aircraft, and other products.

There are hundreds of software programs available for use by engineering and design companies. Three are at issue in this case: CGS, CATIA, and CADAM. These software products are part of a category of software known as "CAD/CAM CAE" products. The acronym stands for computer assisted design, computer assisted manufacturing, and computer assisted engineering.

CGS (an acronym for Corporate Graphics System) is software developed and owned by GM and EDS, and EDS is the exclusive supplier of CGS software. On some of its projects, GM requires outside engineering and design vendors to use the CGS software. CGS is used primarily for body surface design.

There are three ways engineering or design companies seeking to use CGS can obtain access to that software from EDS. First, a customer can have computer terminals which are able to access the mainframes at the EDS Information Processing Center installed at its own site (referred to as "mainframe CGS"). Second, a customer can go to an EDS Design Center and use the computers there on an hourly basis. Third, a customer can license a "workstation" version of CGS to be installed on computers at the customer's office. Workstation CGS did not become available until the second quarter of 1991.

TriCom alleges antitrust violations by EDS as follows:

1. Illegal tying in violation of section 1 of the Sherman Act, 15 U.S.C. § 1;

2. Illegal tying in violation of section 3 of the Clayton Act, 15 U.S.C. § 15;

3. Illegal monopoly in violation of section 2 of the Sherman Act, 15 U.S.C. § 2; and

4. Illegal attempted monopoly in violation of section 2 of the Sherman Act, 15 U.S.C. § 2.

TriCom alleges that EDS conditions the leasing of its CGS software upon the lease or purchase of certain tied products, thereby depriving TriCom of the opportunity to compete in the lease or sale of the tied products. Tricom further alleges that "EDS used its

monopoly power over CGS to engage in various anti-competitive acts."

. . . .

"In Counts I and II of the Complaint, Tricom alleges that EDS engaged in an illegal restraint of trade under section 1 of the Sherman Act and section 3 of the Clayton Act by virtue of certain tying arrangements. A tying arrangement is an agreement by a seller to sell one product [the tying product] only on the condition that the buyer also purchase a different product [the tied product]. Tricom alleges that EDS leases CGS in a package that requires the lessee to also lease or purchase of the following tied products: 1) CATIA software; 2) CADAM software; 3) telecommunications lines linking the customer to the EDS mainframe computer facility; 4) computer hardware such as graphics terminals, keyboards, monitors, multiplexors, and graphics controllers and associated peripheral devices; and 5) CPU time (time sharing) of 40 hours per week for 50 weeks regardless of whether the time is actually used."

In this, its July 10, 1995, motion for partial summary judgment or in the alternative to exclude certain damage claims, EDS contends that Tricom improperly asserts a refusal to deal claim, that such a claim grossly inflates Tricom's damages, and that the court should grant partial summary judgment and should dismiss such a claim or, in the alternative, that the court should exclude Tricom's damage study allegedly based on such a claim.

## II. Standard of Review

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## III. Analysis

Part of the parties' dispute centers around whether Tricom actually is asserting a refusal to deal claim. According to EDS, Tricom claims that EDS should be required to license its CGS software to Tricom and to third parties.

■ Tricom's pleadings are ambiguous. On one hand, Tricom states that it never abandoned its refusal to deal claim. "Tricom never waived EDS's liability for refusing to license CGS." Response, pp. 1–2. "Tricom made it clear that its claims included ... **both** the EDS's tying CGS software to CPU time sharing ... **and** EDS's 1991 refusal to grant Tricom a CGS license." Response, pp. 5–6 (bold in original). "Tricom also seeks an injunction remedying EDS's 1991 refusal to deal with Tricom." Final Pretrial Order, p. 3. On the other hand, Tricom states that its claim is not based on an alleged right to obtain a license to CGS. "Tricom's damage calculation is based on its share of lost sales of each of the tied products, including mainframe CPU time, from October 31, 1988, through the date of trial. No CGS license (direct or indirect) is required, and Tricom's damage calculation does not require it to 'use' CGS." Response, p. 2.

■ Assuming that Tricom asserts a claim that EDS should be compelled to license CGS to Tricom and to third parties, EDS is entitled to summary judgment on such a claim. Under patent and copyright law, EDS may not be compelled to license its proprietary software to anyone. *Genentech, Inc. v. Eli Lilly and Co.,* 998 F.2d 931, 949 (Fed.Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1126, 127 L.Ed.2d 434 (1994) (university was free to grant licenses on an exclusive or nonexclusive basis; decision to withhold license alone did not form the basis of antitrust claim); *SCM Corp. v. Xerox Corp.,* 645 F.2d 1195 (2d Cir.1981), *cert. denied,* 455 U.S. 1016, 102 S.Ct. 1708, 72

L.Ed.2d 132 (1982) (Xerox's refusal to license its photocopying patent is permissible under patent laws); *Data General Corp. v. Grumman Systems Support Corp.*, 36 F.3d 1147 (1st Cir.1994) (refusal to license copyrighted software is valid business justification; antitrust claim dismissed).[1] Thus, partial summary judgment is granted, and Tricom's claim that EDS should be compelled to license CGS to Tricom and to third parties is dismissed.

■ The dispute between the parties, however, is more complex. Tricom claims that EDS impermissibly ties the sale of CGS software to the sale of CPU time on EDS's mainframe computer. Tricom is a competitor in the market for sale of CPU time on a mainframe. Thus, Tricom implies that it should be permitted to run on Tricom's mainframe CGS software licensed or otherwise sold to designers.

EDS misconstrues this claim as either 1) a claim that EDS must grant Tricom a license to use CGS or 2) a claim that EDS must grant third parties a license to use CGS on Tricom's mainframe, with the result that Tricom would run CGS as an "indirect licensee." Tricom's claim is that when EDS chooses to permit the use of CGS software, it should not be permitted to limit which mainframe the software is used on. Tricom wants to compete in the market which provides CPU time to CGS software users. Tricom does not seek to "use" CGS software or to resell it to designers.

EDS further claims if it were forced to license CGS, it would be permitted to place reasonable restrictions on its use, thereby prohibiting its use on the Tricom mainframe. EDS cites *Corsearch, Inc. v. Thomson & Thomson*, 792 F.Supp. 305 (S.D.N.Y.1992) in support of this proposition because in that case, the defendant licensed a trademarked database to plaintiff with the restriction that the database could not be used by third parties, operated on more than one computer at a time, operated on a multiple computer processing unit, or operated in a multi-site arrangement. *Id.* at 313. The defendant later terminated the license. *Corsearch* does not address the issue of whether the trademark holder had the right to restrict the use of the trademarked database in this manner nor did the court address whether the license restrictions were reasonable. The court merely found that the trademark holder had the right to terminate its license to the plaintiff and the termination did not violate the Sherman Act. *Id.* at 322–23.

■ The issue of what use restrictions would be reasonable is not an issue currently before the court.[2] Moreover, EDS may not use patent or copyright law to support a tie over nonpatented or noncopyrighted products. A patent or copyright holder may impose only legitimate restrictions on the use of a patent or copyright which do not enforce a tie. In *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 704 (Fed.Cir.1992), the court held that a patent holder may reasonably restrict the use of its patented product. However, the court also noted that a restriction may not attempt to extend the scope of the monopoly permitted by the patent to

---

**1.** EDS also argues that Tricom should be judicially estopped from making a refusal to deal claim. The doctrine of judicial estoppel bars a party who has "successfully and unequivocally" argued a position in a prior court proceeding from taking an inconsistent position in a later proceeding. *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir.1982). The requirement that the party must have "successfully" asserted a prior position means that the party must have been successful in persuading the first court to *expressly* adopt the position. *Id.* at 599. In other words, judicial estoppel does not prevent a party from contradicting itself, it only bars the party from contradicting itself where a court previously adopted the party's prior position. *Teledyne Industries, Inc. v. N.L.R.B.*, 911 F.2d 1214, 1217–18 n. 3. (6th Cir.1990). The issue of

whether Tricom asserted a refusal to deal claim was not previously expressly presented to the court, and thus the court did not expressly adopt any parties' position on the issue. Thus, judicial estoppel does not apply.

**2.** This issue may come up at trial in the context of whether EDS has a business justification for tying its software to its mainframe and whether the tie is the least restrictive means for achieving its business purposes. *See Mozart Co. v. Mercedes–Benz of N. Am., Inc.*, 833 F.2d 1342 (9th Cir.1987), *cert. denied*, 488 U.S. 870, 109 S.Ct. 179, 102 L.Ed.2d 148 (1988) (business justification is defense only if there was no less restrictive means to satisfy the legitimate business objective).

nonpatented products. *Id.* (citing *Motion Picture Patents Co. v. Universal Film Mfg. Co.,* 243 U.S. 502, 516, 37 S.Ct. 416, 420, 61 L.Ed. 871 (1917)).

In *Motion Picture Patents* a license notice was attached to patented movie projectors, stating that the purchaser had the right to use the machine only with motion picture films that were leased from the patentee. The defendant used a patented projector with films leased from other sources. The Court condemned the patentee's tie-in as illegal, since it extended the "scope of its monopoly" to materials which were not part of the patented invention. *Id.* "The Supreme Court has also emphasized that there are limits on the control a patent holder may exercise over his licensee. Among other restrictions, he may not condition the right to use his patent on the licensee's agreement to purchase, use, or sell or not to purchase, use or sell another article of commerce not within the scope of his patent monopoly." *Miller Insituform v. Insituform of N. Am., Inc.,* 830 F.2d 606 (6th Cir.1987), *cert. denied,* 484 U.S. 1064, 108 S.Ct. 1023, 98 L.Ed.2d 988 (1988). "[A] patentee may not lawfully exact, as the condition of a license, that unpatented materials used in connection with his invention be purchased exclusively from him." *Barber–Colman Co. v. National Tool Co.,* 136 F.2d 339 (6th Cir.1943).

■ At oral argument on this motion, EDS claimed that Tricom may not operate CGS software on its mainframe without violating EDS's copyright because in order to operate the CGS software, Tricom must load it onto the mainframe. This constitutes "copying" under copyright law. *MAI Systems Corp. v. Peak Computer, Inc.,* 991 F.2d 511 (9th Cir.1993), *cert. dismissed,* — U.S. ——, 114 S.Ct. 671, 126 L.Ed.2d 640 (1994) (copying for purposes of copyright law occurs when computer program is transferred from permanent storage device to computer's random access memory). *Accord Advanced Computer Services of Mich., Inc. v. MAI*

*Systems Corp.,* 845 F.Supp. 356 (E.D.Va. 1994). EDS overlooks the fact that, as discussed above, a copyright holder's right to enforce its copyright is limited by antitrust laws, like the laws against tying. A copyright owner may not enforce its copyright to violate the antitrust laws or indeed use it in any "manner violative of the public policy embodied in the grant of a copyright." *Lasercomb America, Inc. v. Reynolds,* 911 F.2d 970, 978 (4th Cir.1990). Again, a copyright holder, like EDS, may impose only legitimate restrictions on the use of the copyright which do not enforce a tie.

Tricom alleges that EDS improperly extends its allowed monopoly power under copyright law over its software to CPU time sharing on its mainframe, a market where EDS does not have permissible monopoly power. Under antitrust law, EDS may not condition the right to use CGS software on the purchase of CPU time from EDS.[3]

EDS also argues that CPU time (access to EDS's mainframe) is not a product separate from CGS software. The court discussed this issue at length in its October 5, 1994 order and determined that Tricom had presented a fact question for trial. EDS moved to reconsider, and the court denied the motion on October 28, 1995. Even if this second request to reconsider was valid and timely, EDS has not provided new grounds in support of such request.

EDS also argues that the statute of limitations bars Tricom's claim. The court discussed this issue at length in its August 15, 1994, order and determined that each contract that a customer signed with EDS constituted a new independent act which allegedly caused a new and independent antitrust injury to Tricom. Thus, Tricom is entitled to sue under the antitrust laws for the injury it suffered as a competitor in the market for sales of CPU time, telecommunications lines, hardware, and access to CATIA and CADAM during the limitations period.

**3.** It should also be noted that Tricom does not seek to deprive EDS the value of its copyright. If EDS chooses to license its software to a designer, EDS sets the price for the license. Tricom merely claims that it should be able to compete with EDS in selling CPU time to the designer to enable the designer to use the software. Every designer who comes to Tricom wishing to use CGS on Tricom's mainframe would have to obtain the right to use the CGS software from EDS.

■ EDS also claims that Tricom lacks standing because it has not suffered an antitrust injury due to the fact that Tricom is not a competitor in the software licensing market. EDS points out that Tricom does not have a right to obtain CGS so that it can resell it to its own customers. For example, in *Almeda Mall, Inc. v. Houston Lighting & Power Co.,* 615 F.2d 343 (5th Cir.), *cert. denied,* 449 U.S. 870, 101 S.Ct. 208, 66 L.Ed.2d 90 (1980), shopping mall owners sought to force an electric company to provide electricity to only one mall hookup so that the mall owners could resell the electricity to mall tenants. The purpose of antitrust laws is to protect competition. Accordingly, where the mall owners sought to act as mere noncompetitive middlemen, they did not suffer an antitrust injury and they lacked standing to sue. *Accord HyPoint Technology, Inc. v. Hewlett–Packard Co.,* 949 F.2d 874 (6th Cir.1991), *cert. denied,* 503 U.S. 938, 112 S.Ct. 1480, 117 L.Ed.2d 623 (1992). EDS further argues that Tricom lacks standing because it is not a design vendor.

Cases like *Almeda* and *HyPoint* are not applicable to this case. Tricom's claim is not based on a right to compete in licensing CGS to designers. Nor is Tricom's claim based on a right to use CGS as a designer. Tricom claims that it is a competitor in the market for providing mainframe CPU time sharing, telecommunications lines, related hardware, and access to CATIA and CADAM software. Its antitrust injury lies there.

ES also contends that Tricom is not a competitor in time sharing services for CGS users because EDS monopolizes this market. This contention obviously begs the question. Tricom seeks to compete in this market. Its antitrust injury results from EDS's tying of CGS software to CPU time sharing.

## IV. Conclusion

For the reasons set forth above, Defendant's July 10, 1995, motion for partial summary judgment or in the alternative to exclude certain damage claims is GRANTED IN PART AND DENIED IN PART as follows:

IT IS ORDERED THAT Tricom's claim that EDS should be compelled to license CGS to Tricom and to third parties is dismissed.

IT IS ORDERED THAT Tricom's claim that EDS impermissibly ties the sale of CGS software to the sale of CPU time on EDS's mainframe computer, implying that it should be permitted to run CGS licensed or otherwise sold to designers on Tricom's mainframe remains and Tricom's damage study may be introduced as evidence.