**AMERICAN EXPRESS COMPANY,
Plaintiff,**

v.

**CFK, INC., Defendant.**

**No. 96–CV–72329.**

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 8, 1996.

---

Mark A. Cantor, Maria Franek, Brooks & Kushman, P.C., Southfield, MI, Mark J. Liss, James D. Zalewa, Amy N. Cohen, Leydig, Voit & Mayer, Ltd., Chicago, IL, for Plaintiff.

Wallace H. Glendening, Eric S. Bronstein, Donald A. Jordan, Jaffe, Raitt, Heuer & Weiss, Detroit, MI, for Defendant.

## ORDER

JULIAN ABELE COOK, Jr., Chief Judge.

The Plaintiff, American Express Company, filed a motion for partial summary judgment

on August 30, 1996, in which it seeks to obtain an injunction that would prohibit the Defendant, CFK, Inc. from using its trademark. Opposition papers were filed by CFK on September 19, 1996. A hearing was held on September 30, 1996, after which the matter was taken under advisement.

## I

American Express Company is a well recognized company in financial and travel related fields, in which it offers such services as charge cards, traveler's checks, tour arrangements, and reservation services. In addition, American Express cardholders use their charge cards to purchase goods throughout the world, as well as from direct mail catalogs. In recent years, the Company has offered an array of promotional items, including attache cases, key chains, note pads, card holders, vinyl and leather portfolios, and tee shirts to its employees and nonemployees.

In November of 1974, American Express developed an advertising campaign which featured the slogan, "DON'T LEAVE HOME WITHOUT US." According to the Company, this slogan was intended to encourage the public to use their American Express cards and Traveler's Cheques while traveling on business and pleasure. Subsequently, American Express extended its marketing campaign to include the slogans, "DON'T LEAVE HOME WITHOUT IT" and "DON'T LEAVE HOME WITHOUT THEM."[1] These slogans were, and continue to be, used nationally on television and radio broadcasts, in magazines and newspapers, and in direct mailings such as statement stuffers and on store displays.[2] American Express has spent in excess of six hundred million dollars on their "DON'T LEAVE HOME WITHOUT ..." marketing campaigns during the last six years. These marks have been used by those airlines, restaurants, hotels, and retail establishments who have joined with American Express in its various promotional efforts. The slogans were so successful that the Company received accolades from *Advertising Age* magazine, which proclaimed that the "DON'T LEAVE HOME WITHOUT ..." marks had become "embedded in the collective American consciousness." *The 50 Best*, ADVERTISING AGE, Feb. 28, 1995, at 38.

American Express received a federal service trademark for "DON'T LEAVE HOME WITHOUT IT" and "DON'T LEAVE HOME WITHOUT THEM" on April 14, 1981. During the following week (April 21, 1981), the Company obtained a similar mark for "DON'T LEAVE HOME WITHOUT US."

CFK, Inc. is a small Detroit-based company owned and run by 74–year old Charlie Kalvelage. Since 1984, CFK has sold or donated fewer than 5,000 pocket-sized address books to business associates, without a trademark, or with the slogan "Let's Keep In Touch." In 1993, Kalvelage developed a new name for CFK's product; namely, the "Don't Leave Home Without Me Pocket Address Book." Kalvelage denies that he mimicked the American Express' "DON'T LEAVE HOME WITHOUT ..." marks, and insists that the name of the address book was based on his ingenuity and without any intent to appropriate another trademark.

On December 3, 1993, CFK, Inc. filed an application in the United States Patent and Trademark Office for the "Don't Leave Home Without Me Pocket Address Book." The application was based on CFK's intention to use the trademark in the future. When American Express first learned of the application, it advised CFK in writing of its

---

1. In its pleadings, American Express refers to the marks collectively as the "DON'T LEAVE HOME WITHOUT ... marks." The Court will do the same. However, the use of this term should not suggest that this Court has extended American Express' trademark to all of the Company's slogans which begin with "DON'T LEAVE HOME WITHOUT ..." In fact, only the three slogans, which have been listed in the text of this opinion, are registered with the United States Patent and Trademark Office as marks.

2. For example, well known advertisements include the "DO YOU KNOW ME" campaign in which famous personalities such as Jack Nicklaus, Mike Ditka and Itzak Perlman were featured with an American Express card. Also memorable are the Karl Malden "DON'T LEAVE HOME WITHOUT THEM" campaigns, in which he promoted American Express Traveler's Cheques.

prior rights to the "DON'T LEAVE HOME WITHOUT ..." marks and demanded that the application be withdrawn. However, CFK did not provide American Express with a written response to the notice. Moreover, a CFK representative informally advised American Express that it did not intend to cease its use of the mark or withdraw its trademark application. Notwithstanding its earlier protestations, American Express never formally opposed the application that had been filed by CFK with the U.S. Patent and Trademark Office. On August 13, 1996, CFK was issued a Notice of Allowance by the U.S. Patent and Trademark Office for the mark, "Don't Leave Home Without Me Pocket Address Book," under 15 U.S.C. § 1063(b)(2), noting that "[n]o successful opposition was filed." A Notice of Allowance was granted for use of CFK's mark on "address books."

On May 20, 1996, American Express initiated this lawsuit pursuant to an amendment to the Lanham Act, to wit, § 43, commonly known as the Federal Trademark Dilution Act of 1995 which became effective in January of 1996. In its Complaint, American Express contends that CFK's use of the slogan, "Don't Leave Home Without Me Pocket Address Book," is likely to dilute the distinctive quality of its "DON'T LEAVE HOME WITHOUT ..." marks. It, therefore, seeks an injunction that will prohibit CFK's distribution of the address book which bears the "DON'T LEAVE HOME WITHOUT ..." language. In its response, CFK denies that its challenged mark dilutes any of American Express' three claimed service marks.

## II

### A. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure,[3] a summary judgment is to be entered if the moving party demonstrates that there is no genuine issue as to any material fact, and if the evidence is such that a reasonable jury could find only for the

moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In making this determination, the court is authorized to examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the non-moving party. *Boyd v. Ford Motor Company,* 948 F.2d 283 (6th Cir.1991), *cert. denied,* 503 U.S. 939, 112 S.Ct. 1481, 117 L.Ed.2d 624 (1992); *See also United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.,* 749 F.2d 1205, 1210–11 (6th Cir.1984). However, it is not the role of the court to weigh the facts. *60 Ivy Street Corp v. Alexander,* 822 F.2d 1432, 1435–36 (6th Cir.1987). Rather, the responsibility of the judge is to determine "whether ... there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 249, 250, 106 S.Ct. at 2510–2511, 2511.

"There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* (citations omitted). Federal Rule Civil Procedure 56(e) proscribes that an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or otherwise provided in this rule, must set forth specific facts which demonstrate that there is a genuine issue for trial. Thus, the mere existence of a scintilla of supporting evidence is insufficient. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir.1989). The failure of a party to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial...." will mandate the entry of summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

---

**3.** Fed.R.Civ.P. 56 provides, in pertinent part, that:

[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on filed, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

**314**

## B.  Federal Dilution Act of 1995

### 1.  History

The Lanham Act, which was enacted by Congress in 1946, codified the common law as it related to trademark infringement. Under the Act, an individual or an entity is liable in a civil action if (1) his trademark is similar to the trademark of the aggrieved party, and (2) it is likely to be misleading or cause confusion between the competing products.[4]  As of 1990, twenty six states had passed "anti-dilution" statutes which were designed to protect a trademark from being used by another person or entity even if the challenged use relates to goods or services which are so different that public confusion is unlikely.[5]

Federal law did not create a cause of action for dilution until January of 1996 when the Federal Trademark Dilution Act was enacted.  15 U.S.C. § 1125(c)(1) now provides:

The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to any injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the famous mark has become famous and causes dilution of the distinctive quality of the famous mark, and to obtain such other relief as is provided in this subsection.

In § 45, the Act defines "dilution" as:

[T]he lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of (1) competition between the owner of the famous mark and other parties; or (2) likelihood of confusion, mistake, or deception.

The legislative history of the statute indicates that it was enacted "to protect famous trademarks from subsequent uses that blur the distinctiveness of the mark or tarnish or disparage it, even in the absence of a likelihood of confusion." *Ringling Bros.–Barnum & Bailey Combined Shows, Inc., v. B.E. Windows Corporation,* 937 F.Supp. 204, 208 (S.D.N.Y.1996), *quoting* H.R.Rep. No. 374, 104th Cong., 1st Sess. 3 (1995), U.S.Code Cong. & Admin.News 1995, 1029, 1030.  The enactment of this Act was also designed to prevent the forum shopping that occurred as the result of limited number of states with anti-dilution statutes.  *Id., citing* 141 Cong. Rec. H14317–01, H14317 (daily ed. Dec. 12, 1995) (statement of Rep. Moorhead).

### 2.  Elements

Under the Federal Trademark Dilution Act, a plaintiff must prove that (1) its mark is distinctive and famous;  and (2) the defendant's use of the same or a similar mark creates a likelihood of dilution through tarnishment or blurring.

#### a.  Distinctive and Famous

Section 45 of the Act sets forth those factors that a court may consider when at-

---

**4.**  § 43(a) of the Lanham Act provides:
Any person who, or in connection with any goods or services, or any container for goods, uses in commerce any work, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
1.  Is likely to cause confusion, or to cause mistake or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services or commercial activities by another person, or
2.  In commercial advertising or promotion, misrepresents the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities,
shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

**5.**  *See e.g. Duluth News–Tribune v. Mesabi Publishing Co.,* 84 F.3d 1093, 1099 (8th Cir.1996) (Minnesota anti-dilution statute protects trademark owners from dilution of distinctive quality of their marks notwithstanding likelihood of confusion): *Babbit Electronics, Inc. v. Dynascan Corp.,* 38 F.3d 1161 (11th Cir.1994) (Florida statute enables person to obtain injunction enjoining subsequent use by another of same or similar mark if likelihood of injury to business reputation or of dilution of distinctive quality of mark exists, notwithstanding absence of competition between parties or of confusion as to source of goods or services); *International Jensen v. Metrosound U.S.A.,* 4 F.3d 819, 826 (9th Cir.1993) (Illinois anti-dilution statute provides additional protection to trademark owners by preventing the disparagement or erosion of their marks through use by third parties on non-confusing, non-competing products).

tempting to determine whether a mark is distinctive and famous:

(A) the degree of inherent or acquired distinctiveness of the mark;

(B) the duration and extent of use of the mark in connection with the goods or services with which the mark is used;

(C) the duration and extent of advertising and publicity of the mark;

(D) the geographic extent of the trading area in which the mark is used;

(E) the channels of trade for the goods or services with which the mark is used:

(F) the degree of recognition of the mark in the trading areas and channels of trade of the mark's owner and the person against whom the injunction is sought;

(G) the nature and extent of use of the same or similar marks by third parties; and

(H) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

A review of these factors favors American Express' position that its "DON'T LEAVE HOME WITHOUT ..." marks are distinctive and famous.

#### i. degree of inherent or acquired distinctiveness

While there is no particular inherent distinctiveness in the phrase "DON'T LEAVE HOME WITHOUT (it) (us) (them)," the phrase as it applies to American Express has acquired a distinctiveness through repeated use over the course of twenty years. The Company has expended substantial sums of money to promote its slogan which appears in virtually every advertisement for American Express services.

#### ii. duration and extent of the use of the mark

American Express has utilized its "DON'T LEAVE HOME WITHOUT ..." marks consistently in their print and television advertisements since 1974, and has expended millions of dollars to do so. The slogan, present in most, if not all, American Express advertisements, always appears next to the "American Express" name and one or more of the other slogans used by the Company.

#### iii. duration and extent of advertising of the mark

American Express has been using the disputed slogans, which were trademarked in 1981, since November of 1974. As noted above, American Express has expended substantial sums of money in its promotion of the slogans. These facts clearly support American Express' claim of distinction.

#### iv. geographical extent of area where mark is used

The American Express slogans are used worldwide in magazines, newspapers and on the radio. In addition, the Company promotes its products with the assistance of, and cooperation with, national and international hotels, restaurants and retail establishments.

#### v. channels of trade for goods or services

American Express specializes in financial and travel related fields, and offers charge cards, traveler's checks, tour arrangements and reservation services to the general public. The Company also makes a variety of goods and related services available to its customers through mail order catalogs and provides promotional items to its employees.

#### vi. degree of recognition of the mark

Although there is nothing in this record regarding the extent to which the American Express' "DON'T LEAVE HOME WITHOUT ..." marks are recognized in the market place, the Court concludes that this slogan is widely recognized throughout the world on the basis of the marketing efforts that have been undertaken by the Company over the past two decades.

#### vii. nature and extent of use of mark by others

There is no evidence that the "DON'T LEAVE HOME WITHOUT ..." marks are presently being used by third parties. In fact, American Express indicates in its pleadings that it has been "extremely successful" in preventing the unauthorized use of its mark. (Plaintiff's Motion for Partial Summary Judgment at 4).

### viii. registration of the mark

The "DON'T LEAVE HOME WITHOUT ..." marks are registered with the U.S. Patent and Trademark Office.

In reviewing all of the factors which have been set forth by the Federal Trademark Dilution Act relating to the distinctiveness of trademarks, the Court finds that American Express' "DON'T LEAVE HOME WITHOUT ..." marks are famous and distinctive. They have formed the foundation of American Express' advertising for the last twenty years.

### b. Likelihood of Dilution

■ In order for dilution to occur, the consumer must have a reasonable basis upon which to (1) associate the disputed mark with the plaintiff, and (2) not be confused into thinking that the plaintiff is the source or sponsor of the challenged goods. This fine distinction distinguishes a dilution claim from an infringement claim based upon likelihood of confusion. Even though the likelihood of confusion may be low, dilution lessens the impact of the plaintiff's mark, through tarnishment or blurring. For instance, in *American Express Co. v. Vibra Approved Laboratories Corp.*, 1989 WL 39679 (S.D.N.Y. April 19, 1989), the Court, in granting a preliminary injunction, found that the defendant's use of a replica of an American Express card as a container for its condom produced a legitimate concern that the reputation of the Company's products would be tarnished. In the case at bar, American Express does not contend that CFK's use of the slogan, "Don't Leave Home Without Me Pocket Address Book," will tarnish its commercial image. Indeed, the fact that CFK is not involved in any immoral or controversial form of business makes it unlikely that American Express would be able to succeed with such a claim. Rather, American Express apparently contends that CFK's use of a similar mark blurs the impact of its slogan.

■ American Express argues that any use of a similar mark by a third party constitutes a basis for a finding of dilution. In support of this position, American Express cites *Kimberly Knitwear, Inc. v. Kimberly Stores, Inc. of Michigan*, 331 F.Supp. 1339, 1341 (W.D.Mich.1971) in which the court found that the use of a similar name by the defendant had diluted the plaintiff's name, even in the absence of direct competition between the parties. In reaching its decision, the Court noted that "the gravamen of a dilution complaint is that the continuing use of a mark similar to the plaintiff's will inexorably have an adverse effect upon the value of the plaintiff's mark...." *Id.* quoting R. Callmann, Unfair Competition, Trademarks, and Monopolies (3rd Ed.1967) § 84.2.

In its pursuit of this argument, American Express would have the Court determine that *any* use of a similar mark by another person or entity would constitute dilution, as defined by 15 U.S.C. § 1127. However, such an interpretation would contravene the specific language in the statute as well as the sparse case law which interprets it. American Express' reading of the statute would develop a standard of strict liability, which, in turn, would obligate a reviewing tribunal to enjoin anyone who used a mark similar to that of another company, even absent proof of dilution. The statute does not support this reading. If Congress intended such a result, the language of 15 U.S.C. § 1127 could have defined "dilution" as simply the use of any similar mark. Instead, it left a complainant to prove that the mark would lessen the capacity of the famous mark to identify and distinguish goods or services.

■ Owing to its recent passage by the Congress, there are very few reported cases which have interpreted the Federal Trademark Dilution Act. Moreover, there is no state cause of action for dilution in Michigan.[6] Hence, clear and precise standards regarding dilution have yet to emerge. *See, Ringling Bros.*, 937 F.Supp. at 207–09 (S.D.N.Y.1996) (blurring sufficient to constitute dilution requires case-by-case factual inquiry). However, a useful six factor test for determining dilution has flowed from the few reported cases that have interpreted 15 U.S.C. § 1127. While the test, which borrows from an interpretation of New York's anti-dilution statute, is not binding on this

6. *Aero–Motive Co. v. U.S. Aeromotive, Inc.* 922 F.Supp. 29, 47 (W.D.Mich.1996).

Court, it accurately reflects the concerns and considerations in a dilution case.

In *Ringling Bros.*, the Court was faced with a complaint against a bar, which had promoted itself as "The Greatest Bar on Earth." Ringling Brothers complained that the bar was capitalizing on its slogan, "The Greatest Show on Earth" which it had nurtured for decades. In denying the plaintiff's motion for preliminary injunction, the Court analyzed its claim pursuant to the six factors in *Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 875 F.2d 1026, 1035 (2d Cir.1989) in an effort to determine the likelihood of dilution, if any, that had been caused by blurring; namely (1) similarity of the marks; (2) similarity of the products covered by the marks; (3) sophistication of consumers; (4) predatory intent; (5) renown of the senior mark; and (6) renown of the junior mark. *Ringling Bros.*, 937 F.Supp. at 209–11.

### i. similarity of marks

■ The marks in dispute "must be 'very' or 'substantially' similar and ... absent such similarity, there can be no viable claim of dilution." *Mead Data*, 875 F.2d at 1029. As in *Ringling Bros.*, there is a problem presented by the fact that American Express' slogan is made up of common descriptive words, rather than by a single descriptive word, such as Kodak or Polaroid. If the "DON'T LEAVE HOME WITHOUT ..." mark is dissected, it contains such common terms as "don't," "leave," "home," "without," and "it," "us," or "them." In fact, the phrase "DON'T LEAVE HOME WITHOUT ..." connotates a very common admonition. However, the collective phrases, which have been used by American Express have come to denote the Company. The "DON'T

LEAVE HOME WITHOUT ..." marks are famous slogans that are associated with American Express' financial and travel related services throughout the world.

Although the record indicates that CFK is not using the exact mark that has been, and is now being, marketed by American Express, its mark differs from that of American Express only in the object of the preposition, "without." The similarity is buttressed by the fact that the object used in the phrases of both companies is a pronoun. Moreover, the implication of CFK's phrase is the same as that of American Express; namely, that CFK's pocket address book is indispensable to the consumer. Thus, CFK's slogan is substantially similar to that of American Express.[7]

### ii. similarity of products covered by the marks

■ While the likelihood of confusion between the companies on the part of the consumer is not relevant to a dilution claim, the similarity of the product is relevant to the potential impact of CFK's slogan on the ability of the American Express mark to distinguish the Company's goods or services. *See, Ringling Bros.*, 937 F.Supp. at 211–12 (products covered by marks are dissimilar, requiring stronger showing of potential blurring than would be required if products were similar).[8] The pleadings, which have been submitted thus far, indicate that there is little, if any, similarity between the services offered by American Express and the product distributed by CFK. American Express specializes in financial and travel related services. It has produced no evidence that it offers address books with the "DON'T LEAVE HOME WITHOUT ..." marks em-

---

**7.** CFK maintains that its trademark includes the entire phrase "Don't Leave Home Without Me Pocket Address Book" and, thus, it is not substantially similar to the American Express product. The words, "pocket address book," were disclaimed from exclusivity outside of the trademark, but remain a part of the federal trademark. Nevertheless, American Express' trademark is entitled to protection when it is used in combination with other words. *See e.g. Ringling Bros.–Barnum & Bailey Combined Shows, Inc. v. Celozzi–Ettelson Chevrolet*, 855 F.2d 480 (7th Cir. 1988) (affirming issuance of preliminary injunc-

tion based on dilution cause of action where defendant, though adding words to mark, adopted plaintiff's entire slogan and circus motif to sell used cars ("The Greatest Used Car Show on Earth")). Thus, the use of generic words, such as "pocket address book," do not prove that CFK's logo is dissimilar to that of American Express.

**8.** *See also WAWA, Inc. v. Haaf*, 1996 WL 460083 (E.D.Penn. August 7, 1996) (similarity of products offered by parties supported plaintiff's claim of dilution).

bossed on them. In fact, the Company does not market such products.[9] Moreover, the American Express slogans are registered specifically for use with charge card services, traveler's check services, and financial services for travellers. (Plaintiff's exh. 5). CFK, on the other hand, sells pocket address books to a small market in the metropolitan Detroit, Michigan region. It is not involved in any way with credit card or other financial services. Thus, the products that are covered by the marks in dispute are not related, or at the very least, there is a genuine issue of a material fact as to this evidence.

### iii. sophistication of consumers

Blurring is less likely if the consumers of the plaintiff's product are "sophisticated." *Mead Data*, 875 F.2d at 1031–32 (sophistication of LEXIS users, who are primarily attorneys, made it unlikely that there would be any significant amount of blurring between LEXIS and LEXUS marks). In this case, the fact that consumers must apply for, and receive, an American Express Credit card, or deliberately solicit financial services from the Company suggests a certain level of sophistication. *But see Ringling Bros.*, 937 F.Supp. at 212, n. 12 (consumers attended circus for variety of reasons, some of whom had been given free tickets or lured by outside musical act—not to see "The Greatest Show on Earth," and thus, consumer sophistication was low). The relatively high level of sophistication of those persons who choose to take advantage of the services of American Express suggests that the negative impact of CFK's slogan upon the selling power of American Express' slogan is questionable.

### iv. predatory intent

CFK claims that it did not purposely mimic American Express' "DON'T LEAVE HOME WITHOUT ..." marks. According to Charlie Kalvelage, the owner of CFK, he conceived of the name of his address book without any intent to encroach upon other

trademarks. When viewing the evidence in a light that is most favorable to Kalvelage, it would appear that the generic nature of the slogan, "DON'T LEAVE HOME WITHOUT ...," lends support to his position.[10] However, the substantially similarity between the slogans presents a genuine issue of a material fact as to the originality of CFK's slogan.

### v. renown of the senior mark

As discussed above, American Express' "DON'T LEAVE HOME WITHOUT ..." marks are world renowned. The Company has used this slogan for over twenty years and expended substantial sums of money to promote its products through print and television advertisements. The famous nature of the slogan supports a finding of dilution.

### vi. renown of the junior mark

Unless subsequent evidence supports a contrary conclusion, CFK is not nationally well-known or famous. The CFK address books, which bear the slogan, "Don't Leave Home Without Me Pocket Address Book," are circulated among a relatively small market. The advertising and circulation costs of these books are relatively minuscule when compared to the massive advertising campaigns that have been undertaken by American Express. Thus, it is less likely that CFK's use of its slogan will cause any dilution by blurring the minds of the public. *Ringling Bros.*, 937 F.Supp. at 212 (where fame of junior mark is non-existent, likelihood of finding dilution is minimal).

Balancing the factors listed above, there remains several genuine issues of material facts which pertain to American Express' dilution claim. The marks in dispute are similar. However, the products and services that each party offers to the general public are not. Moreover, American Express has not successfully eliminated those genuine issues of material facts relating to the sophistication of American Express' customers and the predatory intent of CFK. Finally, the

---

9. The only product offered by American Express, which is similar to an address book, is an organizer/planner that is distributed as promotional material for its travel related services. Significantly for the purpose of this motion, the American Express book does not contain a "DON'T LEAVE HOME WITHOUT ..." mark.

10. His contention would be less credible, for instance, if he had used a name similar to that of Kodak or Coca-Cola, neither of which have any secondary meaning outside of the context of the product described.

distinctiveness of American Express' slogan as opposed to that of CFK makes it less likely that blurring will occur. Thus, viewing the evidence in a light most favorable to CFK, American Express has not shown that it is entitled to a summary judgment at this stage of the litigation.

## III

For the reasons that are stated above, American Express' motion for partial summary judgment is denied.

IT IS SO ORDERED.