**WILCOM PTY. LIMITED,**
**et. al., Plaintiffs,**

v.

**ENDLESS VISIONS, et al., Defendants.**

**No. 98–71421.**

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 2, 1998.

Daniel J. Stephenson, Jill M. Wheaton, Dykema, Gossett, Detroit, MI, for Plaintiffs.

Alfred Ronald Haines, Monroe, MI, Pro se.

**OPINION & ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

EDMUNDS, District Judge.

This matter comes before the Court on Plaintiffs Wilcom Pty. Limited (Wilcom) and Melco Industries, Inc.'s (Melco) motion for summary judgment. The complaint sets forth five counts: (1) copyright

infringement, (2) false designation of origin, (3) federal trademark dilution, (4) unfair competition under Michigan common law, and (5) unfair competition in violation of the Michigan Consumer Protection Act. Because there are no genuine issues of material fact that Defendants are liable on all of the claims, Plaintiffs' motion for summary judgment is GRANTED, and Defendants' motion for summary judgment is DENIED.

## I. Facts

### A. Procedural Background

On March 31, 1998, the Plaintiffs filed this lawsuit, seeking a Temporary Restraining Order under § 502 of the Copyright Act. The TRO was granted on April 1, 1998. Following a hearing on April 6, 1998, this Court granted Plaintiffs' request for seizure of Defendants' means of infringement and any remaining infringing copies of Plaintiffs' software in Defendants' possession and allowed Plaintiffs access to FBI seized material. This Court has provided Defendants ample time to obtain counsel, which Defendants have failed to secure. On May 20, 1998 this Court granted a Preliminary Injunction at the Plaintiffs' request.

### B. Substantive Background

Plaintiff Wilcom is an industry leader in the design and manufacture of computer embroidery software. Plaintiff Melco, who also joins in this motion, distributes Wilcom's software throughout the United States. Wilcom's software allows businesses and individuals to create intricate embroidery designs for translation from creation on the computer to works of embroidery on fabric. A common use of the software is creating logos or designs to be stitched into articles of clothing like sweatshirts and baseball hats. Wilcom sells millions of dollars of embroidery software each year in the United States alone.

The software known as the ES series comes in many different versions, ranging in price and in the level of functions it will perform. Wilcom sells the programs through its distributor, Melco, to commercial embroidery manufacturers who use the software in connection with embroidery machines for the use of commercially embroidered products. The ES series software is sold under the WILCOM trademark.

The computer code contained in all of the versions of the ES series is the same. However, each copy of the software is accompanied by a security device which tells the software which level of features a customer is allowed to access. The software has two different security devices, either a Trysoft or a dongle.

When the software is used on a computer, a copy of it is loaded into the computer's Random Access Memory (RAM). Before allowing the customer access to the software's functions, the software checks for the presence of a security device. If it does not locate one, the program stops running. If it does find one, the software "asks" the security device to tell it which level the customer can access. The software also obtains the serial number from the security device and stores the number in the computer's memory.

When a commercial customer wants to test the software before purchasing it, Wilcom encodes the security device so that it will allow the software to operate for a limited amount of time. Wilcom keeps records of the serial numbers used with the commercial copies of the software and the security device settings so that it can keep track of which customer has access to which functions. The records keep track of both the software that is sold and the software that is distributed only on a trial basis.

Wilcom also makes another version of the software for the home sewing market. This version of the software is distributed under the "Bernina Artista" trademark. All of Wilcom's software is marketed under a license agreement to prevent purchasers from copying, modifying, or using

the software at more than one computer at time.

Defendants made money by selling "custom patches" which enabled purchasers of the patches to defeat the security code in Wilcom's software. Defendants advertised the "patches" for the ES–65 model of the software on the Internet, and also sold them over the phone. The patches were advertised under the WILCOM trademark. Patches were also sold for the software with the Bernina Artista trademark. The Defendants business is known as "dongle cracking."

A patch is nearly an exact copy of the main file of the computer program that contains the part of the code that interacts with the security device. The file in the ES series is ES.EXE; in the Bernina Artista software it is BE.EXE. The custom patches sold by Defendants are nearly an exact copy of the code with a small segment of the code altered.

Altering the code allows the program to run without a security device. When the customer replaces the Wilcom program with the Defendant's patch, the program operates normally, without a security device. Defendants customers are able to run, duplicate and distribute unauthorized copies of copyrighted programs without a security device. Copies of the Defendants' patched program is available on the Internet, allowing anyone with access to the Internet an opportunity to download a copy of Wilcom's copyrighted software.

## II. Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). After adequate time for discovery

and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. 2505.

The court must believe the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. 2505. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. 2505.

## III. Analysis

### A. Copyright Infringement Claim

■ In order for a Plaintiff to be entitled to summary judgment for copyright infringement, a Plaintiff must show: (1) ownership of a valid copyright; and (2) infringement of the copyrighted work. *Ronald Mayotte & Assoc. v. MGC Bldg. Co.*, 885 F.Supp. 148, 152 (E.D.Mich.1994), citing *Robert R. Jones Assoc., Inc. v. Nino Homes*, 858 F.2d 274, 275 (6th Cir.1988). In the instant case, there is no genuine issue of material fact that Wilcom has demonstrated both requirements. First,

Wilcom has copyright registrations for versions 5.0–5.2 of the ES series. 17 U.S.C. § 410(c).[1] This is evidence that Wilcom is the owner of the copyrights to the programs.

■ Second, Plaintiffs have demonstrated infringement. Infringement of a copyright can be shown in two ways, either by direct evidence of copying, or by proof that Defendants had access to the copyrighted work and that the copyrighted work and the infringing work are "substantially similar." *Castle Rock Entertainment, Inc. v. Carol Publishing Group, Inc.*, 150 F.3d 132, 137–38 (2d Cir.1998). Wilcom is entitled to summary judgment in this case because there is ample direct evidence in the record that Defendants, on many occasions, copied Wilcom's copyrighted software. Furthermore, the substantial similarity between Wilcom's software and Defendants' patches conclusively establishes the Defendants' liability.

There are a number of ways to show that an infringing copy of a computer program has been made. For example, an infringer can make an electronic copy of the signals that tell a computer what to do. These signals, known as machine readable object codes, can be stored on a device like a floppy disk or a hard drive. *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1248–49 (3d Cir.1983) *cert dismissed*, 464 U.S. 1033, 104 S.Ct. 690, 79 L.Ed.2d 158 (1984). Another way is if the infringer launches the copyrighted program without authorization on his or her own computer by printing documents which were create by using the program. This creates a temporary copy of the program's object code in the RAM. When the computer is turned off, the copy disappears, but it is sufficiently "fixed in a tangible medium of expression" to constitute an infringing copy under the Copy-right Act. *Cf. Tricom, Inc. v. Electronic Data Systems Corp.*, 902 F.Supp. 741, 745 (E.D.Mich.1995). Either type of copying described above constitutes infringement.

■ There is evidence on the record that establishes that Defendants infringed Wilcom's copyrights by both of these methods. The declaration of Mr. James Wong provides testimony that it would have been impossible for Defendant to create the patches for the ES–65 and the Bernina Artista software without having access to copies of the entire programs. (See Wong declaration at ¶¶ 23–25, 27). Defendant Haines was not an authorized user of either program. The only way he could make the copies was by making copies from authorized versions. The record establishes that Haines made his unauthorized copy of the ES–65 program from a trial copy of the software which was provided by Wilcom to a prospective customer in late 1997. This is apparent from the fact that the security device serial number and the identification code contained in the "patch" Haines sold to Aaron Benedict had the identical serial and identification codes referenced in the documents the FBI seized from Endless Visions.

The documents seized from Endless Visions by the FBI also include two printouts that can be made with Wilcom's software. The only way for Haines to have obtained the printouts was to load the software into a PC, run the software and print them.

Furthermore, the record clearly establishes that Defendants had access to the copyright work and that there is a substantial similarity in expression between the copyrighted work and the defendants work. *Robert R. Jones Assoc., Inc. v. Nino Homes*, 858 F.2d 274, 276–78 (6th Cir.1988). The similarity here between the copy and the original is so striking,

---

1. 17 UCSA § 410(c) states: "In any judicial proceedings the certificate of a registration made before or within five years of the first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court."

there is no possibility of independent creation. Therefore, copying can be inferred regardless of proof of access. *Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987) *cert. denied. sub nom Williams v. Baxter*, 484 U.S. 954, 108 S.Ct. 346, 98 L.Ed.2d 372 (1987).

Summary judgment is proper in favor of the plaintiff in a copyright infringement case where the similarity between the copy and the original is so similar that reasonable minds could not differ. *Litchfield v. Spielberg*, 736 F.2d 1352, 1355–56 (9th Cir. 1984). *Cf. Atari Games Corp. v. Nintendo of America, Inc.*, 1993 WL 214886, 30 U.S.P.Q.2d 1401 (N.D.Cal.1993).[2] In this case the Defendants' patches are nearly exact copies of the relevant program files, with only a small variation in code. For example, the Defendants patch for the ES–65 program duplicated 926,586 of the 926,720 bytes of information. Wong declaration ¶ 10. Only 134 bytes are different. The possibility of independent creation is virtually impossible. Therefore, Plaintiffs are entitled to judgment as a matter of law on the copyright infringement claim.[3]

### B. False Designation of Origin

■ In order to show they are entitled to summary judgment for a claim of false designation of origin under Section 43(a) of the Lanham Act, Plaintiffs' must show that Defendants' use of the WILCOM mark is likely to create customer confusion. *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 647 (6th Cir.1982), *cert. denied* 459 U.S. 916, 103 S.Ct. 231, 74 L.Ed.2d 182 (1982). The evidence shows that Wilcom has used the WILCOM mark in commerce to designate the source of its computer software since

1980. Melco has exclusively distributed the software since 1992. On March 20, 1998, Wilcom filed a trademark application for the WILCOM mark and design.

According to the documents seized by the FBI from Endless Visions, Defendants used the WILCOM mark on their website in connection with the sale of the infringing patch for the ES–65 software. The website contained an advertisement that a custom patch for the Wilcom ES–65 software was available.

■ The likelihood of consumer confusion is determined by weighing several factors, including: (1) the strength of the plaintiff's mark, (2) relatedness of the goods, (3) similarity of the marks, (4) evidence of actual confusion, (5) marketing channels used, (6) likely degrees of purchaser care, (7) defendant's intent in selecting the mark, and (8) the likelihood of expansion of the product lines. *Frisch's Restaurants*, 670 F.2d at 648. Here, the distinctive WILCOM mark is strong. The Defendants used the identical mark on their website to sell a product that is nearly identical to the main filed in Wilcom's software. Further the Defendants used the Wilcom mark in order to benefit from the goodwill that Wilcom has built in its mark over the years. Based on these factors, Defendants have created a likelihood of consumer confusion. Plaintiffs are entitled to summary judgment on the false designation of origin claim.

### C. Federal Trademark Dilution

■ Plaintiffs' next claim is for a violation of the Federal Trademark Dilution Act, 15 USCA § 1125. To show a violation

---

**2.** Substantial similarity can also be established where the qualitative significance of the copied material is great, and the volume of copied material is small. *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 565–66, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985) (substantial similarity shown where defendant copied 300 words out of 200,000.)

**3.** The principal case relied upon by the Defendant is *Vault Corp. v. Quaid Software Ltd.*, 847 F.2d 255 (5th Cir.1988). Nothing in *Vault* requires a different result here because *Vault* merely held that the loading of a program into a computer's memory did not constitute a violation of the Act. *Vault* did not involve the copying of the copyright owner's object code.

of this act, the plaintiff must show: (1) its mark is distinctive and famous, and (2) the defendant's use of the same or a similar mark creates a likelihood of dilution through tarnishment or blurring. *American Express Co. v. CFK, Inc.,* 947 F.Supp. 310, 314 (E.D.Mich.1996). Because there are no genuine issues of material fact that Defendants breached the Act, summary judgment is proper on this claim as well.

The Act sets forth the factors that a court considers when deciding if the mark is distinctive and famous. These factors include: (1) the degree of inherent or acquired distinctiveness of the mark, (2) the duration and extent of use of the mark in connection with the goods or services with which the mark is used, (3) the duration and extent of advertising and publicity of the mark, (4) the geographic extent of the trading area in which the mark is used, (5) the channels of trade for the goods or services with which the mark is used, (6) the degree of recognition of the mark in the trading areas and channels of trade of the mark's owner and the person against whom the injunction is sought, (7) the nature and extent of use of the same or similar marks by third parties, and (8) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register. *American Express,* 947 F.Supp. at 315.

As a matter of law, Wilcom's mark is distinctive and famous because it has been used, advertised, and promoted extensively throughout the United States and globally since 1980. Through Wilcom's lengthy and uninterrupted use, the mark has become well known to the public as identifying the products Wilcom offers. The WILCOM mark is known across the United States as a source of high quality embroidery software products. Therefore, the first requirement, that the mark be distinctive and famous is established as a matter of law.

Likewise, the second requirement, that the mark create a likelihood of dilution through tarnishment or blurring is also established as a matter of law. The Court considers six factors in determining the likelihood of dilution. These factors include: (1) the similarity of the marks, (2) the similarity of the products covered by the marks, (3) sophistication of consumers, (4) predatory intent, (5) renown of the senior mark, and (6) renown of the junior mark. *Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A., Inc.,* 875 F.2d 1026, 1035 (2d Cir.1989). Because the Defendants used the exact same mark as that used by Wilcom, the analysis of these factors compels the conclusion that the use of the mark created a likelihood of dilution. Defendants used the WILCOM mark to market a nearly identical product. Defendants intent to capitalize on the business reputation of Wilcom can be inferred. Therefore, Plaintiffs are entitled to summary judgment on this claim.

### D. Unfair Competition Claims

Plaintiff next count involves two unfair competition claims. One is based upon Michigan's common law; the other based on the Michigan Consumer Protection Act, MCLA § 445.903 *et. seq.* For the reasons set forth below, the Plaintiffs are entitled to summary judgment on this claim.

The same factors which establish a false designation of origin claim under the Lanham Act, also establish common law unfair competition and unfair business practices under the Michigan Consumer Protection Act. The analysis focuses on whether the Defendants' use of the WILCOM mark is likely to create consumer confusion. *Wynn Oil Co. v. American Way Serv. Corp.,* 943 F.2d 595, 605 (6th Cir.1991) (scope of Michigan common law same as federal law); *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.,* 931 F.2d 1100, 1104–05 (6th Cir.1991) (Michigan statutory and common law unfair competition claims involve same questions as Lanham Act claims). Therefore,

because Plaintiffs are entitled to summary judgment on the claim for false designation of origin, they are likewise entitled to summary judgment on the unfair competition claim.

### IV. Conclusion

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above, the Court hereby orders as follows: Plaintiffs' motion for summary judgment is GRANTED as to all claims, and Defendants' motion for summary judgment is DENIED. Therefore, judgment in favor of Plaintiffs Wilcom and Melco, and against Defendants Endless Visions and Alfred Haines shall enter.

IT IS SO ORDERED.